Aron M. Oliner (SBN: 152373)
DUANE MORRIS LLP
One Market Spear Tower, Suite 2200
San Francisco, California 94105
Telephone:  415.957.3000
Email: ROliner@duanemorris.com

Jeff D. Kahane (SBN:  223329)
Mohammad Tehrani (SBN: 294569)
DUANE MORRIS LLP
865 South Figueroa Street, Suite 3100
Los Angeles, California 90017
Telephone:  213.689.7400
Email: JKahane@duanemorris.com
Email: MTehrani@duanemorris.com

Attorneys for Appellants, Bayside
Court Owners Association, Laurence
Jennings, Raj Patel, Justin Hu,
Lawrence Drouin, and Andrew
Cantor

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br><br>Sarah-Jane Parker,<br><br><div align="center">Debtor.</div><br>_____<br>—<br>Bayside Court Owners Association, et al.,<br><br><div align="center">Appellants,</div><br><div align="center">v.</div><br>Sarah-Jane Parker,<br><br><div align="center">Appellee.</div> | 4:19-cv-02588-YGR<br><br>Bankr. Case No. 14-44083-CN<br><br>Chapter 13<br><br>Hon. Yvonne Gonzalez Rogers<br><br>**OPENING BRIEF ON APPEAL OF APPELLANTS BAYSIDE COURT OWNERS ASSOCIATION, LAURENCE JENNINGS, RAJ PATEL, JUSTIN HU, LAWRENCE DROUIN, AND ANDREW CANTOR** |

DM3\6115181.1

OPENING BRIEF ON APPEAL OF APPELLANTS BAYSIDE COURT OWNERS ASSOCIATION, LAURENCE JENNINGS, RAJ PATEL, JUSTIN HU, LAWRENCE DROUIN AND ANDREW CANTOR

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

STATEMENT OF JURISDICTION ...................................................................... 2

THE STANDARD OF REVIEW .......................................................................... 2

STATEMENT OF THE ISSUES ......................................................................... 3

STATEMENT OF THE CASE ............................................................................. 4

I.     PROCEDURAL HISTORY ........................................................................ 4

     A.    Parker Files Bankruptcy and Surrenders the Property in her Plan. ......... 4

     B.    The Bankruptcy Court's Partial Summary Judgment that the CC&Rs "Run With the Land". ................................................................. 5

     C.    The Ruling Below ................................................................................ 5

II.    STATEMENT OF FACTS ......................................................................... 8

     A.    Events Leading to Parker's Sanctions Motion ....................................... 8

     B.    BCOA's alleged violations ..................................................................... 9

III.   SUMMARY OF ARGUMENT ................................................................. 11

ARGUMENT ....................................................................................................... 13

IV.   THE BANKRUPTCY COURT CORRECTLY HELD APPELLANTS WERE NOT IN CONTEMPT ................................................................. 13

V.    THE BANKRUPTCY COURT ERRED IN FINDING STAY VIOLATIONS .......................................................................................... 14

     A.    The Automatic Stay ............................................................................ 14

     B.    California Law Allows HOAs to Enforce Delinquent Assessments, Fines, and Reimbursement Costs *In Rem*, and Upon Proper Notice. .... 15

     C.    The Bankruptcy Court Mischaracterized BCOA's Exercise of *In Rem* Rights ................................................................................... 17

     D.    The Bankruptcy Court Erred By Finding Statements to Be Stay Violations. .......................................................................................... 18

          1.    The Statements and Cover Letter Were Not Stay Violations. ...... 18

2.   The Disciplinary Fines and Retro-Assessment Did Not Violate the Stay...................................................................20

3.   The Settlement Letters Did Not Violate the Stay ........................21

E.   The Bankruptcy Court Erred by Imposing $39,000 in Damages For Lost Rents..........................................................................22

VI.   THE BANKRUPTCY COURT ERRONEOUSLY AWARDED EMOTIONAL DISTRESS DAMAGES. ...............................................24

A.   Parker Failed to Introduce Evidence Showing She Suffered "Significant Harm."...............................................................24

B.   Rule 16 Precludes Parker's Testimony Regarding Emotional Distress. ..............................................................................26

VII.   PUNITIVE DAMAGES ARE UNWARRANTED ..........................................28

VIII.   THE BANKRUPTCY COURT ERRED BY ASSESSING LIABILITY ON BCOA'S OFFICERS ....................................................................28

A.   The Individual Appellants Performed Corporate Duties with Reasonable Care, Precluding Liability......................................28

B.   Section 362 Does Not Preempt California Law Protecting Directors and Officers. ...........................................................30

IX.   THE UNREASONABLE ATTORNEYS' FEES AWARD ...........................32

A.   The Bankruptcy Court Improperly Awarded Nearly $370,000 in Fees..................................................................................33

B.   The Bankruptcy Court Awarded Fees For Non-Compensable Work.................................................................................34

C.   Parker Failed to Properly Mitigate Her Damages.................35

D.   Awarding Nearly $370,000 in Attorney's Fees Is Patently Unreasonable for a Consumer Stay Violation ........................36

E.   Parker Is Not Entitled to Any Award Because She Cannot Show Either Injuries or any Stay Violations.....................................38

CONCLUSION..................................................................................38

OPENING BRIEF ON APPEAL OF APPELLANTS BAYSIDE COURT OWNERS ASSOCIATION, LAURENCE JENNINGS, RAJ PATEL, JUSTIN HU, LAWRENCE DROUIN AND ANDREW CANTOR

# <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

**Federal Cases**

*Almendarez-Torres v. United States*
   523 U.S. 224 (1998)...................................................................................... 31

*Amado v. Microsoft Corp.*
   517 F.3d 1353 (Fed. Cir. 2008) ............................................................... 3

*Assocs. Commercial Corp. v. Rash*
   520 U.S. 953 (1997)...................................................................................... 22

*Baker & Drake, Inc. v. Public Serv. Comm'n (In re Baker & Drake, Inc.)*
   35 F.3d 1348 (9th Cir. 1994) ................................................................. 30

*BFP v. Resolution Trust Corp.*
   511 U.S. 531 (1994)...................................................................................... 31

*Bigelow v. Commissioner*
   65 F.3d 127 (9th Cir. 1995) ................................................................... 15

*Bogus v. American National Bank of Cheyenne, Wyo.*
   401 F.2d 458 (10th Cir. 1968) ............................................................... 31

*In re Bristol Associates, Inc.*
   505 F.2d 1056 (3d Cir. 1974) ............................................................... 31

*Butner v. United States*
   440 U.S. 48 (1979)................................................................................ 15, 31

*Camelback Constr. v. Castellino Villas, A.K.F. LLC (In re Castellino Villas, A.K.F. LLC)*
   836 F.3d 1028 (9th Cir. 2016) ............................................................... 21

*Cave v. Singletary*
   84 F.3d 1350 (11th Cir. 1996) ............................................................... 3

*In re Chi., Rock Island & Pac. R.R. Co.*
   865 F.2d 807 (7th Cir. 1988) ................................................................. 3

*In re Coonfield*
    517 B.R. 239 (Bankr. E.D. Wash. 2014) ............................................................. 16

*Cty. of Fresno v. Golden State Capital Corp. (In re Golden State Capital Corp.)*
    317 B.R. 144 (Bankr. E.D. Cal. 2004) ............................................................... 16

*Davis v. Yageo Corp.*
    481 F.3d 661 (9th Cir. 2007) ............................................................................. 31

*Dawson v. Wash. Mut. Bank (In re Dawson)*
    390 F.3d 1139 (9th Cir. 2004) ................................................................. 2, 24-25

*DeBuono v. NYSA-ILA Med. & Clinical Servs. Fund*
    520 U.S. 806 (1997) .......................................................................................... 31

*In re Diamond*
    346 F.3d 224 (1st Cir. 2003) ........................................................................ 21-22

*Diwa v. Cal. FTB*
    2007 WL 1462398 (N.D. Cal. 2007) ........................................................... 19-20

*Eden Place, LLC v. Perl (In re Perl)*
    811 F.3d 1120 (9th Cir. 2016) ..................................................................... 2, 15

*Eskanos & Adler, P.C. v. Leetien*
    309 F.3d 1210 (9th Cir. 2002) ............................................................................. 2

*In re Foster*
    435 B.R. 650 (9th Cir. BAP 2010) ............................................................... 21, 29

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*
    886 F.2d 1545 (9th Cir. 1989) ........................................................................... 33

*Galvez v. Kuhn*
    933 F.2d 773 (9th Cir. 1991) ............................................................................... 2

*Goichman v. Bloom (In re Bloom)*
    875 F.2d 224 (9th Cir. 1989) ............................................................................. 28

*Goudelock v. Sixty-01 Ass'n of Apt. Owners*
    895 F.3d 633 (9th Cir. 2018) ..................................................................... *Passim*

OPENING BRIEF ON APPEAL OF APPELLANTS BAYSIDE COURT OWNERS ASSOCIATION, LAURENCE
JENNINGS, RAJ PATEL, JUSTIN HU, LAWRENCE DROUIN AND ANDREW CANTOR

*Great Western Bank v. Snow (In re Snow)*
    201 B.R. 968 (Bankr. C.D. Cal. 1996) .................................................. 16

*Griffin v. Gomez*
    741 F.3d 10 (9th Cir. 2014) ................................................................... 3

*Gruntz v. Cnty. of Los Angeles (In re Gruntz)*
    202 F.3d 1074 (9th Cir. 2000) ............................................................. 14

*In re Hall*
    518 B.R. 202 (Bankr. N.D.N.Y. 2014) ............................................37-38

*Hensley v. Eckerhart*
    461 U.S. 424 (1983).............................................................................. 38

*Hillsborough Cty. v. Automated Medical Labs., Inc.*
    471 U.S. 707 (1985).......................................................................30, 32

*In re House*
    No. 16-51076-KMS, 2017 WL 2579026 (Bankr. S.D. Miss. June 14,
    2017) ..................................................................................................... 21

*HSBC Bank USA, N.A. v. Blendheim (In re Blendheim)*
    803 F.3d 477 (9th Cir. 2015) ............................................ 13, 34, 36, 38

*In re Jones*
    No. 15-01092, 2016 WL 936914 (Bankr. N.D. Cal. Mar. 10, 2016) ................... 35

*In re Keaty*
    350 B.R. 723 (Bankr. W.D. La. 2006) ............................................21-22

*In re Kent*
    No. 09-35124-tmb13, 2016 Bankr. LEXIS 216 (Bankr. D. Or. Jan. 22,
    2016) ..................................................................................................... 13

*Kolstad v. Am. Dental Ass'n*
    527 U.S. 526 (1999).............................................................................. 28

*Lorenzen v. Taggart (In re Taggart)*
    888 F.3d 438 (9th Cir. 2018) ............................................................... 13

*In re Madison*
  249 B.R. 751 (Bankr. N.D. Ill. 2000) .................................................... 22

*In re Manley Toys Ltd.*
  No. 16-15374 (JNP), 2018 WL 3213710 (Bankr. D.N.J. June 21,
  2018), *aff'd*, No. CV 18-11465 (RMB), 2019 WL 3229301 (D.N.J.
  July 18, 2019) ................................................................................. 37-38

*In re Manoa Fin. Co., Inc.*
  853 F.2d 687. (9th Cir. 1988) ............................................................. 37

*In re McGowan*
  2014 WL 793125 (Bankr. D.N.J, Feb. 26, 2014) ................................. 37

*Michael v. Shiley, Inc.*
  46 F.3d 1316 (3d Cir. 1995) ................................................................ 31

*Miller v. Gammie*
  335 F.3d 889 (9th Cir. 2003) ............................................................... 21

*In re Mocella*
  552 B.R. 706 (Bankr. N.D. Ohio 2016) ............................................... 37

*Morgan Guar. Tr. Co. of New York v. Am. Sav. & Loan Ass'n*
  804 F.2d 1487 (9th Cir. 1986) ...................................................... *Passim*

*New York State Conference of Blue Cross & Blue Shield Plans v.*
*Travelers Ins. Co.*
  514 U.S. 645 (1995) ............................................................................ 30

*In re Nixon*
  419 B.R. 281 (Bankr. E.D. Pa. 2009) ............................................ 37-38

*O'Loghlin v. County of Orange*
  229 F.3d 871 (9th Cir. 2000) ............................................................... 21

*Pacific Gas & Elect. Co. v. State of California*
  350 F.3d 932 (9th Cir. 2003) ............................................................... 31

*Paramount Finance Co. v. U. S.*
  379 F.2d 543 (6th Cir. 1967) ............................................................... 31

*In re Parker*
515 B.R. 337 (Bankr. M.D. Ala. 2014), *aff'd sub nom*, *Parker v. Credit Cent. S., Inc.*, 2015 WL 1042793 (M.D. Ala. Mar. 10, 2015) .................. 37

*In re Parker*
576 B.R. 1 (Bankr. N.D. Cal. 2017) ................................................................. *Passim*

*In re Parks*
2008 WL 2003163 (Bankr. N.D. Ohio May 6, 2008) .......................................... 37

*Patterson v. Hughes Aircraft Co.*
11 F.3d 948 (9th Cir. 1993) .................................................................................... 26

*Preblich v. Battley*
181 F.3d 1048 (9th Cir. 1999) ................................................................................. 2

*In re Ramirez*
547 B.R. 449 (Bankr. S.D. Fla. 2016) ................................................................... 16

*Razzak v. Wells Fargo Bank, N.A.*
No. 17-CV-04939-MMC, 2018 WL 1524002 (N.D. Cal. Mar. 28, 2018) ...................................................................................................................... 23

*Reliance Steel & Aluminum Co. v. Locklin (In re Locklin)*
No. CC-15-1008-KuFKi, 2015 Bankr. LEXIS 4114 (B.A.P. 9th Cir. Dec. 7, 2015) ............................................................................................................ 2

*Renzulli v. Ullman (In re Renzulli)*
No. 15-01983-ABA, Dkt. No. 25 (Bankr. D.N.J. Dec. 22, 2015) .................... 37-38

*In re Risner*
317 B.R. 830 (Bankr. D. Idaho 2004) .................................................................. 38

*In re Rodriguez*
No. 18-10674 CN, 2019 Bankr. LEXIS 1498 (Bankr. N.D. Cal. May 13, 2019) ............................................................................................................... 25

*In re Roman*
283 B.R. 1 (B.A.P. 9th Cir. 2002) ............................................................. 2, 35, 37

*Sealy, Inc. v. Easy Living, Inc.*
743 F.2d 1378 (9th Cir. 1984) ......................................................................... 33, 37

OPENING BRIEF ON APPEAL OF APPELLANTS BAYSIDE COURT OWNERS ASSOCIATION, LAURENCE JENNINGS, RAJ PATEL, JUSTIN HU, LAWRENCE DROUIN AND ANDREW CANTOR

*Severo v. Comm'r*
   586 F.3d 1213 (9th Cir. 2009) ............................................................... 15

*Snowden v. Check into Cash of Washington, Inc. (In re Snowden)*
   769 F.3d 651 (9th Cir. 2014)........................................................... 24-26

*Sternberg v. Johnston*
   595 F.3d 937 (9th Cir. 2009) ................................................... 13, 24-25

*Taggart v. Lorenzen*
   139 S. Ct. 1795 (2019).................................................................. 13-14

*In re Tikhonov*
   No. BAP CC-11-1698, 2012 WL 6554742 (B.A.P. 9th Cir. Dec. 14,
   2012) ...................................................................................................... 23

*Till v. SCS Credit Corp.*
   541 U.S. 465 (2004)............................................................................. 22

*TrafficSchool.com, Inc. v. Edriver Inc.*
   653 F.3d 820 (9th Cir. 2011) ................................................................. 3

*Matter of Trupp*
   764 F. App'x 600 (9th Cir. 2019)......................................................... 35

*United States v. Joyce*
   511 F.2d 1127 (9th Cir. 1974) ............................................................. 26

*In re Vaughn*
   2016 WL 836968 (Bankr. M.D. Ala. Mar. 3, 2016) ........................... 37

*In re Voll*
   512 B.R. 132 (Bankr. N.D.N.Y. 2014)................................................. 37

*Walls v. Wells Fargo Bank, N.A.*
   276 F.3d 502 (9th Cir. 2002) .............................................................. 13

*In re Ware*
   533 B.R. 701 (Bankr. N.D. Ill. 2015)................................................. 23

*In re Warren*
   532 B.R. 655 (Bankr. D.S.C. 2015)..................................................... 37

DM3\6115181.1          viii

OPENING BRIEF ON APPEAL OF APPELLANTS BAYSIDE COURT OWNERS ASSOCIATION, LAURENCE
JENNINGS, RAJ PATEL, JUSTIN HU, LAWRENCE DROUIN AND ANDREW CANTOR

*In re Warren*
   No. 15-CV-03655-YGR, 2016 WL 1460844 (N.D. Cal. Apr. 13,
   2016) ......................................................................................................... 18

*Wei Suen v. Demas Wai Yan (In re Demas Wai Yan)*
   381 B.R. 747 (N.D. Cal. 2007) ............................................................... 2

*In re White*
   487 F.3d 199 (4th Cir. 2007) ................................................................. 23

*ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*
   450 F.3d 996 (9th Cir. 2006) ................................................................. 13

**California Cases**

*Burt v. Irvine Co.*
   237 Cal. App. 2d 828 (1965) ................................................................. 29

*Diamond v. Superior Court*
   217 Cal.App.4th 1172 (2013) ................................................................ 17

*Palm Springs Villas II Homeowners Assn., Inc. v. Parth*
   248 Cal.App.4th 268 (2016) .................................................................. 29

**Federal Statutes**

11 U.S.C. § 105 ............................................................................................. 5, 34

11 U.S.C. § 330 ................................................................................................. 36

11 U.S.C. § 362 ............................................................................................. *Passim*

11 U.S.C. § 524 ................................................................................................. 13

11 U.S.C. § 1123 ............................................................................................... 30

11 U.S.C. § 1142 ............................................................................................... 30

11 U.S.C. § 1325 ............................................................................................... 22

11 U.S.C. § 1327 ............................................................................................... 22

11 U.S.C. § 1328 ............................................................................................... 13

DM3\6115181.1

ix

OPENING BRIEF ON APPEAL OF APPELLANTS BAYSIDE COURT OWNERS ASSOCIATION, LAURENCE
JENNINGS, RAJ PATEL, JUSTIN HU, LAWRENCE DROUIN AND ANDREW CANTOR

28 U.S.C. § 158 ............................................................................................. 2

**State Statutes**

CAL. CIV. CODE § 1460 ............................................................................. 16

CAL. CIV. CODE § 1462 ............................................................................. 16

CAL. CIV. CODE § 5600 ............................................................................. 16

CAL. CIV. CODE § 5650 ..................................................................... 7, 10, 16

CAL. CIV. CODE § 5660 ........................................................................ 7, 16

CAL. CIV. CODE § 5675 ....................................................................... 16, 17

CAL. CIV. CODE § 5690 ......................................................................... 17-18

CAL. CIV. CODE § 5700 ............................................................................. 16

CAL. CIV. CODE § 5705 ............................................................................. 16

CAL. CIV. CODE § 5720 ............................................................................. 16

CAL. CIV. CODE § 5725 ............................................................................. 16

CAL. CORP. CODE § 7231.5 ........................................................... 29-30, 32

CAL. GOV'T CODE § 7171 ....................................................................... 19

OPENING BRIEF ON APPEAL OF APPELLANTS BAYSIDE COURT OWNERS ASSOCIATION, LAURENCE JENNINGS, RAJ PATEL, JUSTIN HU, LAWRENCE DROUIN AND ANDREW CANTOR

1

## **INTRODUCTION**

2      Bayside Court Owners Association ("BCOA"), Laurence Jennings, Raj Patel,

3  Justin Hu, Lawrence Drouin, and Andrew Cantor (collectively, "Appellants") appeal

4  from the judgment entered below on April 11, 2019,[1] in the bankruptcy court.  The

5  bankruptcy court incorrectly found Appellants violated the automatic stay by

6  enforcing BCOA's claim for delinquent homeowner's association ("HOA")

7  assessments against a 6,672 square foot condominium in Bayside Court, Oakland, CA

8  ("Property").  *See* 11 U.S.C. § 362.

9      The bankruptcy erred by finding HOA delinquency statements (required under

10  state law) to be *per se* stay violations, contravening Ninth Circuit precedent.  *Morgan*

11  *Guar. Tr. Co. of New York v. Am. Sav. & Loan Ass'n*, 804 F.2d 1487, 1491 (9th Cir.

12  1986).  It also improperly extended the automatic stay to non-estate property.  The

13  debtor, Sarah-Jane Parker ("Parker"), surrendered the Property to BCOA through a

14  confirmed chapter 13 plan ("Plan"); hence, the automatic stay did not bar BCOA's *in*

15  *rem* remedies against the Property.

16      The bankruptcy court based its decision upon a misapplication of a recent

17  Ninth Circuit decision, *Goudelock v. Sixty-01 Ass'n of Apt. Owners*, 895 F.3d 633

18  (9th Cir. 2018).  Despite clear contrary language, the bankruptcy court misinterpreted

19  *Goudelock* to limit BCOA's rights against the Property.

20      Further, the bankruptcy court improperly awarded $433,116.95 for purported

21  stay violations by Appellants.  However, prior to filing her contempt motion, Parker

22  never contended any of Appellants' actions violated the stay or mitigated her

23  damages in any way.  Parker could have avoided this litigation by adhering to her

24  Plan, and by alerting Appellants to their purported stay violations.

25  ─────────────

26  [1]    The bankruptcy court explained its judgment in a Memorandum Decision
   entered on January 29, 2019 (ECF No. 299), and the Order Awarding Attorneys' Fees
27  and Costs entered on April 11, 2019 (ECF No. 315), all of which are subject to this
   appeal.

28

Thus, the bankruptcy court incorrectly found that Appellants violated the automatic stay after Parker surrendered the Property and BCOA obtained stay relief. Its ruling should be reversed.

## STATEMENT OF JURISDICTION

District courts have jurisdiction over appeals "from final judgments, orders, and decrees" entered by bankruptcy courts.  28 U.S.C. § 158(a)(1); *Wei Suen v. Demas Wai Yan (In re Demas Wai Yan)*, 381 B.R. 747, 752 (N.D. Cal. 2007).  On April 11, 2019, the bankruptcy court entered a final judgment against Appellants. Bankruptcy Case ECF No. ("ECF No.") 316; *see Eden Place, LLC v. Perl (In re Perl)*, 811 F.3d 1120, 1126 (9th Cir. 2016).  Appellants appealed timely on April 24, 2019.  Bankruptcy Case ECF No. 317; Fed. R. Bankr. P. 8002(a)(1).  Hence, the Court has jurisdiction over the appeal.

## THE STANDARD OF REVIEW

This Court reviews the bankruptcy court's conclusions of law "*de novo*" and its findings of fact for "clear error".  *Preblich v. Battley*, 181 F.3d 1048, 1051 (9th Cir. 1999).  "Findings are clearly erroneous when the panel is left with a definite and firm conviction that a mistake has been committed." *In re Roman*, 283 B.R. 1 (B.A.P. 9th Cir. 2002).  The scope of the automatic stay preemption are questions of law. *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1213 (9th Cir. 2002); *Galvez v. Kuhn*, 933 F.2d 773, 776 (9th Cir. 1991).  The determination of what actions Appellants took, the purpose of those actions, and whether any purported stay violations were willful are questions of fact.  *Reliance Steel & Aluminum Co. v. Locklin (In re Locklin)*, No. CC-15-1008-KuFKi, 2015 Bankr. LEXIS 4114, at *11 (B.A.P. 9th Cir. Dec. 7, 2015).

The decisions to impose sanctions for a discharge injunction violation, and to award emotional distress damages, is reviewed for abuse of discretion.  *Dawson v. Wash. Mut. Bank (In re Dawson)*, 390 F.3d 1139, 1150 (9th Cir. 2004).  A court

abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or without support from the record.  *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

The court must defer to the bankruptcy court's reasonable interpretation of its own order.  *Griffin v. Gomez*, 741 F.3d 10, 25 (9th Cir. 2014).  However, a court's interpretation of its order is not entitled to deference if its interpretation is unreasonable or is an abuse of discretion. *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1358 (Fed. Cir. 2008) (citing *Cave v. Singletary*, 84 F.3d 1350, 1354-55 (11th Cir. 1996)); *see also In re Chi., Rock Island & Pac. R.R. Co.*, 865 F.2d 807, 810 (7th Cir. 1988).

## STATEMENT OF THE ISSUES

The appeal presents the following issues:

1.     Did the bankruptcy court err by finding Appellants violated the automatic stay by enforcing BCOA's rights against the Property after Parker surrendered the Property in full satisfaction of her debt?

2.     Did the bankruptcy court err by imposing $5,000 in emotional distress damages based solely on Parker's uncorroborated and self-serving testimony regarding her purported anger, anxiety, and depression?

3.     Did the bankruptcy court err by awarding $10,000 in punitive damages against Appellants for enforcing BCOA's rights after obtaining stay relief following Parker's surrender of the collateral?

4.     Did the bankruptcy court err by awarding Parker $39,000 in "property interference" damages after Parker surrendered her possessory rights in the Property?

5.     Did the bankruptcy court err by assuming Section 362(k) allows a debtor to recover attorney's costs and fees incurred for litigating matters beyond the scope of that statute?

6.    Did the bankruptcy court err by finding $369,346.90 as a reasonable amount of attorney's fees for litigating a consumer stay-relief motion?

7.    Did the bankruptcy court err by holding that Section 362(k) preempts California state law shielding officers and directors from individual liability?

8.    Did the bankruptcy court err by finding the Joint Pretrial Order ("JPO"), which superseded the pleadings and removed emotional distress damages as a triable issue of fact, did not exclude an award of such damages?

## STATEMENT OF THE CASE

### I.    PROCEDURAL HISTORY

#### A.    Parker Files Bankruptcy and Surrenders the Property in her Plan.

Parker filed bankruptcy under chapter 13 on October 8, 2014.  On February 10, 2015, BCOA filed a proof of claim totaling $163,249.18 for "Unpaid Member Account Charges Pursuant to Property CC&Rs" secured by perfected "HOA Liens." *Id.* at 2:17; Proof of Claim 3-1.  In her Plan, Parker surrendered the Property in "full satisfaction of any secured claim by Bayside Court Owners Assn."  Plan, ECF No. 45 at § 5.  The Plan modifies the stay to allow BCOA to exercise its rights against the collateral.  *Id.* at § 2.06.  The bankruptcy court confirmed the Plan on December 18, 2014, removing the Property from the bankruptcy estate and re-vesting it in Parker; causing Parker to surrender the Property; and, granting BCOA immediate stay relief to exercise its *in rem* rights.  Confirmation Order after Meeting of Creditors, ECF No. 50.  Confirmation also.  Plan at § 4.1.

To confirm the scope of stay relief, on March 13, 2015, BCOA filed a motion for stay relief ("Relief Motion").  ECF No. 53.  It requested  "the automatic stay be terminated so that BCOA may exercise or *cause to be exercised any and all rights under the CC&R's*[.]"  *Id.* at 4:9-10 (emphasis added).  Parker's counsel appeared at the hearing, but neither objected nor alleged any stay violations.  The bankruptcy court granted the Relief Motion on April 20, 2015 ("Relief Order").  ECF No. 60.

The bankruptcy court called the Relief Order a "comfort order", indicating BCOA had already obtained such relief by the Confirmation Order.  Memorandum Decision After Trial, ECF No. 299 ("Mem. Dec'n."), at 2:21, n. 19.

### B.   The Bankruptcy Court's Partial Summary Judgment that the CC&Rs "Run With the Land".

On November 13, 2015, Parker filed her motion seeking sanctions for alleged stay violations ("Sanctions Motion").  ECF No. 70.  After Parker's discharge on December 1, 2015, she sought discharge injunction violation sanctions.  ECF No. 129.  The bankruptcy court consolidated the motions and BCOA moved for summary judgment on June 8, 2017.  ECF No. 152.  The bankruptcy court partially granted the motion in a published opinion, August 24, 2017.  *In re Parker*, 576 B.R. 1 (Bankr. N.D. Cal. 2017).

It found "no genuine dispute that BCOA knew of Parker's automatic stay at all relevant times" and "[e]xcept as to the early invoices, no genuine dispute that BCOA's acts were intentional[.]  *Id.* at 9.  However, it found Parker's contempt claims under section 105 "impose[] a more difficult standard than § 362(k)."  *Id.* at 11.  It scheduled a trial finding on many of Parker's contempt claims, and to determine whether "BCOA was trying to recover its pre-petition claim[.]"  *Id.* at 10-11.  However, it recognized in "proper parlance, the CC&R's 'run with the land,' which land includes [the Property]."  *Id.* at 5.  It found as "HOAs may collect post-petition HOA dues without stay relief", holding owners "personally liable for the post-petition HOA obligations."  *Id.* at 10.

### C.   The Ruling Below

The bankruptcy court issued its Memorandum Decision on January 29, 2019.  ECF. No. 299.  It analyzed (1) whether Appellants violated Section 362(k); (2) whether Appellants were in contempt for knowingly violating the automatic stay; and (3) whether Appellants were in contempt for knowingly violating the discharge order.

*Id.*  It required Parker to "establish by clear and convincing evidence" that Appellants (1) knew the discharge injunction and automatic stay were applicable to their actions; and (2) intended the actions that violated those orders.  Mem. Dec'n. at 25:21-22; 27:10-19; n. 25.  It rejected Parker's argument BCOA knew its post-petition HOA statements violated the discharge injunction.  *Id.* at 26:12-13.  Its ruling relied primarily on intervening Ninth Circuit law issued months after trial began. *Goudelock*, 895 F.3d 633.  However, aside from the question of whether there was an intentional discharge violation, it had little bearing.  In *Goudelock*, the Ninth Circuit addressed "whether [HOA] assessments that become due after a debtor has filed for bankruptcy under Chapter 13 of the Bankruptcy Code are discharged upon confirmation of the plan."  *Id.* at 635.  That HOA sued to determine whether a debtor had discharged the personal obligation to pay post-petition assessments.  *Id.* at 636. The Ninth Circuit determined under Washington law and the applicable Declaration of Covenants, Conditions, and Restrictions ("CC&Rs"), that the HOA "obtained two state law remedies under the [CC&Rs] to address the failure to pay HOA assessments: an *in rem* remedy of a lien and right of foreclosure; and an *in personam* remedy allowing it to bring suit against the property owner."  *Id.* at 637.  *Goudelock* left unaltered an HOA's rights to enforce assessments *in rem*, finding their preservation precluded the HOA from prevailing on a takings argument.  *Id.* at 640. It did not mention Section 362(k) or the automatic stay, and did not alter state law regarding obligations that "run with the land."  Hence, *Goudelock* is only marginally relevant.

The bankruptcy court mistakenly believed *Goudelock* overturned controlling precedent on *in rem* rights and found all post-petition HOA fees violated the stay and discharge injunction, but recognized the Ninth Circuit issued *Goudelock* after the conduct occurred.  Mem. Dec'n. at 26:17-19.  Thus, it correctly found the witnesses had a good faith belief that neither the stay nor discharge injunction barred post-

petition assessments.  *Id.* at 26:21-22.  It recognized BCOA issued various standard form statements and "had a good faith belief" that it did not violate the discharge injunction by leasing the Property.  *Id.* at 26:13-14; 27:6-7.  It ruled in BCOA's favor regarding contempt sanction, holding "Parker did not present clear and convincing evidence that BCOA knew that its disciplinary fines were rooted in pre-petition conduct, and that they therefore violated the stay."  *Id.* at 27:15-17.  The bankruptcy court incorrectly deemed Appellants' assessments after the petition date to be pre-petition.  Mem. Dec'n. at 15:5-6.

However, it ruled in favor of Parker's Section 362(k) claims.  *Id.* at 11:16-20. It termed one letter sent by BCOA to Parker's lawyers, a "Settlement Demand", and found it violated the stay.  *Id.* at 12:26.  Despite failing to identify any supporting evidence, the bankruptcy court assumed it, and a "verbatim" letter sent to Parker's counsel December 15, 2014 ("December Letter") were "simply an attempt to make Parker's life miserable", and intended to collect prepetition debt.  *Id.* at 12:23-26.  It unjustifiably found delinquency notices sent in December 2014 and January 2015 "were meant to harass Parker."  *Id.* at 13:9-10.

Without contrary evidence from Parker, the bankruptcy court rejected Appellants' testimony BCOA acted pursuant to state law requiring it to send such notices pursuant to CA Civil Code 5650(b) responsive notice of delinquency".  Trial Tr., ECF No. 290, at 601:9-10; Trial Exs. 16-17, F; Cal. Civ. Code § 5660.  Without citation to evidence or law, it found there "was simply no reason to send these invoices to Parker and her counsel, as there was no 'information' that BCOA needed to convey."  Mem. Dec'n. at 13:15-16.  It also found BCOA's imposition of fines in February and May 2015 "rooted in its CC&Rs and Bylaws" violated the stay even though such imposition was required to exercise BCOA's *in rem* rights.  *Id.* at 14-21.

The bankruptcy court ruled a May 1, 2015 invoice for "retro-assessment" for the year 2015, issued on all affected units, constituted a willful stay violation,

Appellants' stay relief.  *Id.* at 164-13.  It recognized the CC&Rs permitted BCOA's rental of the Property and BCOA did not use the proceeds to pay prepetition debt.  *Id.* at 16:20-28.  It found all post-petition HOA assessments violated the stay.  *Id.* at 17:11-13.  It failed to consider *Goudelock's* distinction of *in rem* and *in personam* rights, and Goudelock's focus on post-petition regular assessments, not special fines caused by a debtor's post-petition actions.

The bankruptcy court awarded Parker $5,000 for Parker's uncorroborated, "internalized", emotional distress.  It awarded Parker $39,000 for "interference with her property rights" for leasing the Property, and punitive damages of $10,000.  The bankruptcy court awarded Parker attorneys' fees of $369,346.90, and $9,770.05 in costs, incurred almost entirely for Parker's failed contempt claims.  Bankruptcy Case ECF No. 315.  In total, the Judgment was $433,116.95, solely for stay relief violations under Section 362(k).  *Id.* at 22-23.  It held Jennings and Patel ("Individual Appellants") jointly and severally liable for $39,000.00 of this award.  *Id.* at 23-24.

## II.  STATEMENT OF FACTS

### A.  Events Leading to Parker's Sanctions Motion

BCOA manages Bayside Court.  CC&Rs at 2.2.  The Individual Appellants, Hu, and Drouin served as volunteers on BCOA's board.  Mem. Dec'n. 17-18.  Parker earns $113,304 annually as an engineer for Oracle.  Trial Tr., ECF No. 273, 9:24-10:1.  Like all units within Bayside Court, the Property is subject to the CC&Rs.  Mem. Dec'n. 2:4-5; CC&Rs, at § 1.2.  The CC&R's describe the rights and obligations of BCOA's "Owners".  *See id.*  The CC&Rs mandate "Regular assessments shall be levied on a fiscal year basis"; require each unit be kept "in good repair and condition"; and allow BCOA to make necessary repairs and assess the costs against applicable units and Owners.  CC&Rs §§ 6.2.1, § 5.3, 5.4, 6.1.  To secure required payments, the "obligation to pay assessments […] runs with the land[.]"  CC&Rs § 6.1.1.

Parker fell delinquent on her monthly HOA assessments in 2011 or earlier. Trial Ex. F.  BCOA sued Parker for unpaid HOA assessments in 2013 ("Alameda Action"), and Parker cross-claimed in March 2014.  JPO at 1:22-24, 2:3.  Her bankruptcy stayed the Alameda Action.  By 2014, Parker was years behind in her mortgage, and a trustee's sale was set for October 8, 2014.  *Id.* at 2:6.  That day, Parker filed for bankruptcy, preventing the sale.  *Id.* at 8-9; *see* Petition, ECF No. 1. She abandoned the Property; the bankruptcy court found she moved to Texas.[2]  Mem. Dec'n. at 2:18; Trial Tr., ECF No. 273, at 18:8-14.  Nonetheless, Parker continued to occupy the Property until January 2015.  Trial Tr., ECF No. 274, at 205:6-19 .  Parker remained on title until November 2016, when the first deed of trust holder foreclosed. JPO at 3:5-8.

### B.    BCOA's alleged violations

On October 29, 2014, BCOA emailed Parker's attorneys, Fong & Fong ("Fong"), not Parker, offering to settle all post-petition assessments for $25,000. if Parker would dismiss the bankruptcy and her Alameda Action claims, and continue trying to sell the Property.  Trial Ex. E; Respondents' Closing Brief, ECF No. 298, at 8:19-22; Stipulation, ECF No. 263, at 1:19; Trial Tr., ECF No. 273, at 7:2-3.  Fong did not reply, but sent a letter jointly to Parker's secured creditors, offering to surrender the Property in "full satisfaction of all outstanding debt" to her secured creditors, including BCOA, if accepted by November 6, 2014.  JPO 8:11-15; Trial Ex. X.  However, the offer expired before BCOA received it.  *See id.*  On December 15, 2014, BCOA sent another settlement offer to Fong ("December Letter").  Mem. Dec'n. at 12:24-25.  Fong did not respond.

On December 2, 2014, pursuant to the California's Davis-Stirling Act ("Act"), BCOA mailed Parker its standard form "Late Payment Demand & Notice of

---

[2]    There is significant evidence Parker moved in November; the date is irrelevant to this appeal.

Delinquency" ("December Statement"), with the overlay, "For Informational Purposes Only" ("Overlay").  Trial Exs. F, 16; Trial Tr., ECF No. 290, at 601:9-10; 602:20-23.  .[3]  Pursuant to the Act, it informed Parker she was up to thirty days past due on $3,354.09 of assessments and aging for Parker's debt, including $1,550 between 31-60 days past due.  *Id.*  It contained a charge history and Parker's balance for annual assessments, late fees, and interest totaling $169,669.88.  *Id.*

BCOA mailed another statement with the Overlay to Parker on January 2, 2015 ("January Statement" and collectively, with the December Statement, "Statements").  Trial Exs. H, 17.  It informed Parker $3,337.61 of debt was thirty days' past due, and included a letter stating, *inter alia*, "Your Association Member's account is past due!"  *Id.*  Both Statements explained they were sent as a "responsive notice of delinquency sent to all delinquent member accounts" pursuant to the Act, "CA Civil Code § 5650(b)".  *Id.*  Both Statements cited the applicable CC&R and Act sections.  *Id.*  The letter also cited applicable CC&R sections.  *Id.*

With Parker's abandonment and surrender, she stopped maintaining the Property, and in February 2015 BCOA discovered Parker's tenants had left graffiti and rats inside, broken windows, cracked siding, and other disrepair.  Trial Tr.  ECF No. 2910*, at 523:21-524:1.  After Parker failed to address the situation, BCOA paid for maintenance under the CC&Rs.  Mem. Dec'n. at 5:20-21; Trial Ex. I.  BCOA then issued a "[r]eimbursement assessment" against the Property for $1,345.87 on March 1, 2015.  *Id.*  Cumulatively, the Property's disrepair led BCOA to issue fines for: (i) renting her unit; (ii) failing to pay property taxes; (iii) failing to pay prior

---

[3]      Jennings testified he required the Overlay for the Statements, personally applied it on the two copies sent Parker by regular mail, and was unaware of any document missing the Overlay until Parker filed her motion.  Trial Tr., ECF No. 290, at 602:8, 603:19-24; Trial Ex. 17.  The parties disagreed as to whether the Overlay was present, and Parker introduced only the emailed versions without the Overlay.  Trial Tr., ECF No. 290, at 605:18-606:23; Exs. F and H.  However, Jennings instructed BCOA's third-party service provider to do so.  Mem. Dec'n. at 4:8-10.  The bankruptcy court disregarded this dispute.  *Id.* at 13:8-10.

assessments; (iv) failing to pay city taxes; (v) failing to advise the HOA of renting to a tenant; (vi) reducing building security; (vii) removing graffiti from the Property's windows; (viii) hiring pest control for the Property; (ix) reimbursement for pest control supplies; (x) failure to remove window graffiti; (xi) failure to control rodents; (xii) five fines for hanging heavy items in excess of that permitted by the CC&Rs; (xiii) constructing walls without permits; (xiv) storing hazardous materials inside the Property; (xv) putting a wood burning stove in her unit without a permit; (xvi) obstructing fire sprinklers; (xvii) installing an unauthorized satellite dish; (xviii) unauthorized installation of lighting in the common area; (xix) installing electrical wiring without a permit; and (xx) failing to maintain her roof (collectively, "Disciplinary Fines"). *Id.*

In 2015, BCOA re-mapped each unit so it had as-built records for the first time ever. Mem. Dec'n. 15:18-26. As with other units, the Property's original mapping, generated around the year 2000, erroneously calculated the Property to be about 600 square feet smaller than in reality. *Id.* at 15:21-22. Because assessments are a direct function of unit area, BCOA issued amended assessments, resulting in a May 1, 2015 letter informing Parker she owed an additional $1,151.52 for her 2015 assessment. Trial Ex. J.

In 2015, the Owners, including Parker's proxy, voted to amend the CC&Rs to allow BCOA to lease any unit that was both sixty days delinquent and abandoned for sixty days. Mem. Dec'n., 10:9-10; n. 10; 11:13; 10:9-11. BCOA leased the Property on May 26, 2015. *Id.* at 19.

## III.   <u>SUMMARY OF ARGUMENT</u>

The bankruptcy court correctly held Appellants were not in contempt. Parker failed to present the clear and convincing evidence required to show Appellants were in contempt because they knew the stay and discharge injunction applied to their actions and but disregarded them.

However, the bankruptcy court erred finding Appellants violated the stay because Appellants' actions were taken after they obtained stay relief, and were an exercise of their *in rem* rights, or were mere statements or settlement negotiations that were not intended to threaten or coerce Parker.  Moreover, the bankruptcy court erred because Parker's surrender of the Property relinquished rights to the Property's rental proceeds.

The bankruptcy court erred by awarding emotional distress damages without Parker submitting any evidence of the significant harm required for such an award. Parker's failure to include emotional distress facts or damages in the Joint Pretrial Order precluded any testimony on the issue or damages.  The bankruptcy court erred in awarding punitive damages because it failed to make any findings regarding Appellants' mental state warranting such damages.

The bankruptcy court also erred by assessing liability on BCOA's officers for the actions taken by BCOA.  Absent findings that the officers acted outside the scope of their authority, there is no basis to award individual damages.  The bankruptcy court's finding that section 362(k) preempts California law limiting such liability is unprecedented and incorrect.

The bankruptcy court also erred by awarding attorneys' fees without examining the reasonableness of such fees.  Consequently, it awarded substantial fees for non-compensable work, including Fong's fees incurred to prove contempt, which the bankruptcy court found not to have occurred.  Controlling precedent requires a debtor to mitigate stay violation damages.  Parker did not do so, but was still awarded nearly all of Fong's requested fees.  Moreover, the fee award is facially unreasonable; Fong billed more than 50 times the hours courts typically allow for stay violations.  Finally, because Parker provided no evidence of injury, she is not entitled to damages.

For the above reasons, the bankruptcy court's order should be reversed.

DM3\6115181.1

12

OPENING BRIEF ON APPEAL OF APPELLANTS BAYSIDE COURT OWNERS ASSOCIATION, LAURENCE JENNINGS, RAJ PATEL, JUSTIN HU, LAWRENCE DROUIN AND ANDREW CANTOR

1

## **ARGUMENT**

2

## IV. **THE BANKRUPTCY COURT CORRECTLY HELD APPELLANTS WERE NOT IN CONTEMPT.**

3

4

The bankruptcy court correctly held Appellants did not knowingly violate the

5

discharge injunction or the automatic stay.  Mem. Dec'n. at 25-27.

6

"Discharges in chapter 13 cases are governed by § 1328**."**  *In re Kent*, No. 09-

7

35124-tmb13, 2016 Bankr. LEXIS 216, at *4 (Bankr. D. Or. Jan. 22, 2016).  Section

8

1328 allows a court to "grant the debtor a discharge of all debts provided for by the

9

plan."  11 U.S.C. § 1328(a).  "[A] 'discharge' operates as an injunction against a

10

creditor's ability to proceed against a debtor *personally*."  *HSBC Bank USA, N.A. v.*

11

*Blendheim (In re Blendheim)*, 803 F.3d 477, 494 (9th Cir. 2015) (emphasis added);

12

11 U.S.C. § 1328; *see also Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019).  The

13

discharge injunction enjoins only the "personal liability of the debtor[.]"  11 U.S.C. §

14

524(a)(2).  "Discharges leave unimpaired a creditor's right to proceed *in rem* . . . ."

15

*Blendheim*, 803 F.3d at 494; *Johnson*, 501 U.S. at 84 ("[A] bankruptcy discharge

16

extinguishes only . . . an action against the debtor *in personam*—while leaving intact .

17

. . an action . . . *in rem*.").

18

The Bankruptcy Code provides no specific remedy for discharge injunction

19

violations.  *Walls* v. *Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002).

20

Hence, courts issue contempt citations for discharge violation.  *ZiLOG, Inc. v.*

21

*Corning (In re ZiLOG, Inc.)*, 450 F.3d 996, 1007 (9th Cir. 2006).  A party seeking a

22

contempt order must establish by clear and convincing evidence the alleged

23

contemnor (1) knew the discharge injunction was applicable; and (2) intended the

24

actions that violated the injunction.  *Lorenzen v. Taggart (In re Taggart)*, 888 F.3d

25

438, 443 (9th Cir. 2018). The "burden then shifts to the contemnors to demonstrate

26

why they were unable to comply."  *Id.*  Moreover, a court can impose contempt

27

sanctions *only* when "there is no objectively reasonable basis for concluding that the

28

DM3\6115181.1

13

OPENING BRIEF ON APPEAL OF APPELLANTS BAYSIDE COURT OWNERS ASSOCIATION, LAURENCE
JENNINGS, RAJ PATEL, JUSTIN HU, LAWRENCE DROUIN AND ANDREW CANTOR

creditor's conduct might be lawful under the discharge order." *Lorenzen*, 139 S. Ct. at 1801. *Id.* Thus, a court should not find contempt "when there is [a] fair ground of doubt as to the wrongfulness of the defendant's conduct." *Id.* at 1801-02 (citation omitted).

Parker argued only that a statutorily required statement, and BCOA's leasing the Property (an act she approved by proxy) violated her discharge. Mem. Dec'n. at 26. The statement included charges for 2015 HOA fees. As the bankruptcy court acknowledged, prior to *Goudelock*, case law suggested as "a general principle, HOAs may collect post-petition HOA dues without stay relief." *Parker*, 576 B.R. at 11. Moreover, BCOA obtained the Relief Order. Given that context, Parker could not carry her burden of showing BCOA knew that the discharge injunction applied to their actions and intended to violate the automatic stay or the discharge injunction. Parker introduced no evidence at all of BCOA's intent. Thus, the bankruptcy court could not find the intent necessary for contempt.

Parker failed to provide clear and convincing evidence that BCOA applied the rental proceeds to her liability. Mem. Dec'n. at n. 24. Indeed, Appellants testified they booked and held the rent for the senior lender's benefit. Trial Tr., ECF No. 291, at 678:19-25. Without such evidence, Parker could not show Appellants did not have an "objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Lorenzen*, 139 S. Ct. 1802. Thus, the bankruptcy court's ruling on this point only should be affirmed.

## V. THE BANKRUPTCY COURT ERRED IN FINDING STAY VIOLATIONS

### A. The Automatic Stay

The filing of a bankruptcy case "operates as a stay, applicable to all entities, of . . . any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]" 11 U.S.C. § 362(a)(6); *Gruntz v.*

DM3\6115181.1

OPENING BRIEF ON APPEAL OF APPELLANTS BAYSIDE COURT OWNERS ASSOCIATION, LAURENCE JENNINGS, RAJ PATEL, JUSTIN HU, LAWRENCE DROUIN AND ANDREW CANTOR

*Cnty. of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1082 (9th Cir. 2000). The stay applies to acts *in personam* against a debtor, and acts *in rem* against estate property. The *in personam* stay continues until the earlier of the closing or dismissal of a case, or the entry of discharge. 11 U.S.C. 362(c)(2). The *in rem* stay continues until the property is not part of the bankruptcy estate. 11 U.S.C. §§ 362(c)(1); *Bigelow v. Commissioner*, 65 F.3d 127, 129 (9th Cir. 1995). The stay does not stop attempts to collect post-petition debts from property that has re-vested in a debtor. *Severo v. Comm'r*, 586 F.3d 1213, 1216 (9th Cir. 2009) ("An act against the property of the bankruptcy estate is stayed until it is no longer part of the estate[.]").

The bankruptcy court confirmed the Plan on December 17, 2014, ending the stay protecting the Property. Confirmation Order, ECF No. 50. As of that date, the Property was no longer property of Parker's estate. *Id.*; Plan, ECF No. 45, § 4.1.[4] BCOA exercised its *in rem* rights by (1) issuing legally required notice of HOA delinquencies on January 2, 2015 [Trial Ex. 17]; (2) assessed maintenance fees incurred post-petition and pre-discharge on March 15, 2015 [Trial Ex. I]; (3) corrected a prior lien assessment through the "retro-assessment" [Trial Ex. J]; (4) invoiced assessments post-petition; and (5) assessed Disciplinary Fines post-petition.

**B.** **California Law Allows HOAs to Enforce Delinquent Assessments, Fines, and Reimbursement Costs *In Rem*, and Upon Proper Notice.**

"Property interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55 (1979); *In re Perl*, 811 F.3d 1120, 1127 (9th Cir. 2016). California's Davis-Stirling Common Interest Development Act, Cal. Civ. Code § 4000 *et seq.* ("Act"), regulates HOA assessment collection. It permits HOAs to "levy regular and special assessments sufficient to perform its obligations under the

---

[4] BCOA clarified the scope of stay relief by obtaining the Relief Order. It allowed BCOA to "exercise … any and all rights under the CC&R's[.]" ECF Nos. 53, 60.

governing documents and [the Act]." Cal. Civ. Code § 5600(a). Such assessments are a debt to the HOA, and "are delinquent 15 days after they become due[.]" Cal. Civ. Code §§ 5650(a); 5650(b). To secure these obligations, the Act allows HOAs to enforce delinquencies *in rem* or personally against the owner. Cal. Civ. Code § 5700(a). *In rem* rights extend beyond regular assessments, include fines, any costs of collection, late charges, and interest. Cal. Civ. Code § 5675(a).[5]

Further, HOA assessments "run with the land" to allow *in rem* relief. *See Cty. of Fresno v. Golden State Capital Corp. (In re Golden State Capital Corp.)*, 317 B.R. 144, 150 (Bankr. E.D. Cal. 2004); *Great Western Bank v. Snow (In re Snow)*, 201 B.R. 968 (Bankr. C.D. Cal. 1996); *In re Coonfield*, 517 B.R. 239, 243 n. 12 (Bankr. E.D. Wash. 2014) (HOA may pursue *in rem* state law remedies); *In re Ramirez*, 547 B.R. 449, 452 (Bankr. S.D. Fla. 2016) (the obligation to pay condominium fees "survives as an *in rem* obligation because it is a covenant that runs with the land."); *see also* Cal. Civ. Code § 1460 ("Such covenants are said to run with the land."); § 1462 ("Every covenant .., in a grant of … real property, which is made for the direct benefit of the property…runs with the land."). The bankruptcy court recognized, "BCOA's CC&Rs 'run with the land.'" *Parker*, 576 B.R. at 13. *Goudelock* emphasized that an HOA's *in rem* rights survive discharge.

Under the *in rem* relief the Act provides, an HOA cannot foreclose unless a lien "has been validly recorded." Cal. Civ. Code § 5705(c). HOAs must record a "notice of delinquent assessment", and an "itemized statement of the charges owed by the owner," Cal. Civ. Code §§ 5675(a); 5675(b). An HOA must provide notice at least 30 days prior to recording a lien. Cal. Civ. Code § 5660(b). An officer of the HOA must sign the recorded documents, which are sent by certified mail to the

---

[5]   The Act restricts an HOA's foreclosure rights until the delinquency is at least $1,800 or twelve months old. Cal. Civ. Code § 5720(b)(2). An HOA may enforce liens for unpaid fines and penalties through judicial foreclosure; it may not collect such fees in a trustee sale. Cal. Civ. Code § 5725.

member no later than ten days after recordation.  Cal. Civ. Code §§ 5675(d), (e).
These notices are "strictly construed": non-compliance invalidates an HOA's lien.
*Diamond v. Superior Court*, 217 Cal.App.4th 1172, 1190 (2013).  An HOA that fails
to comply with any notice provision must "recommence the required notice process."
Cal. Code Civ. P. § 5690; *Diamond*, 217 Cal.App.4th at 1186 ("An association that
fails to comply with the procedures … shall, prior to recording a lien, recommence
the required notice process.") (citation omitted).  Hence, HOAs must provide the
statutory notices to enforce their *in rem* remedies.

### C. The Bankruptcy Court Mischaracterized BCOA's Exercise of *In Rem* Rights

Inexplicably, the bankruptcy court ignored the Act, even though Appellants
testified the Act required BCOA to send Parker notices and assessments to obtain and
perfect liens.  *See*, *e.g.*, Trial Tr., ECF No. 290, at 602:20-23.

The Statements provided the statutory notice required for BCOA to perfect a
lien for $22,558.20 in new assessments against the Property Trial Ex. 17, and were
sent "for informational purposes only".  The bankruptcy court refused to
acknowledge this mandatory statutory process.  Instead, it found "no reason" for
BCOA to send Parker the Statements.  Mem. Dec'n. at 13:15; 13:17.  Because it
ignored the Act and failed to cite any legal or evidentiary basis for its assumptions, it
clearly erred.

Likewise, the bankruptcy court erred by finding the post-petition
reimbursement assessments, retro-assessment, and post-petition assessments violated
the stay.  *Id.* at 16:11-13.  It incorrectly labeled such notices as an "attempt to collect
a pre-petition debt under *Goudelock*,"  even though the Act allows HOAs to recover
delinquent debt *in rem*, and *Goudelock* reaffirmed a creditor's ability to enforce *in
rem* rights.  *Id.* at 16:13.  By complying with the Act after Parker surrendered the

DM3\6115181.1

17

OPENING BRIEF ON APPEAL OF APPELLANTS BAYSIDE COURT OWNERS ASSOCIATION, LAURENCE
JENNINGS, RAJ PATEL, JUSTIN HU, LAWRENCE DROUIN AND ANDREW CANTOR

1   Property and it re-vested in Parker, BCOA properly enforced *in rem* rights.  It did not

2   violate the automatic stay.

3   The bankruptcy court incorrectly advised BCOA it should have amended its

4   proof of claim to protect its rights.  *Id.* at 16:11-12.  However, amending a proof of

5   claim would not have preserved BCOA's *in rem* rights under California law.  Cal.

6   Code Civ. P. § 5690.  HOAs should do exactly what BCOA did here: "file[]

7   additional liens to secure its interest in unpaid assessments.  To hold otherwise would

8   offend the comprehensive notice scheme and homeowners' rights to contest

9   delinquent assessments as established in the Act."  *In re Warren*, No. 15-CV-03655-

10  YGR, 2016 WL 1460844, at *4 (N.D. Cal. Apr. 13, 2016).

11  Thus, BCOA did not violate the stay by exercising its *in rem* rights.

12  **D.**   **The Bankruptcy Court Erred By Finding Statements to Be Stay**
       **Violations.**

13

14          **1.**   **The Statements and Cover Letter Were Not Stay Violations.**

15  Under Section 362(a)(6), "mere requests for payment are not barred absent

16  coercion or harassment by the creditor."  *Morgan Guar.*, 804 F.2d at 1491.  The stay

17  bars a creditor's "attempts to confiscate the debtor's property or require the debtor to

18  act affirmatively to protect its interests."  *Id.*   "Presentment and other requests for

19  payment unaccompanied by coercion or harassment do not appear to fall within the

20  prohibitions of section 362(a)."  *Id.*  Examples of coercion and harassment include (i)

21  "letters giving notice of intent to terminate a lease"; (ii) "a letter informing the debtor

22  that a creditor medical clinic would provide no future medical services due to his

23  refusal to pay"; (iii) "a letter from an attorney informing the debtor he had been

24  retained by accreditor to collect a delinquent account," (iv) "a college that refused to

25  give transcripts to the debtor to force payment,"; and (v) "a creditor who made

26  repeated visits and telephone calls to the debtor."  *Id.* at n. 4.

27

28

This Court's opinion in *Diwa v. Cal. FTB*, 2007 WL 1462398 (N.D. Cal. 2007) is instructive.  During that bankruptcy case, the Franchise Tax Board ("FTB") sent the debtor a "Notice of State Income Tax Due."  *Id.* at 1.  It listed the debtor's tax balance and included a "50 percent interest-based penalty".  It stated:

> TO AVOID ADDITIONAL INTEREST AND/OR PENALTY, PAY THE FULL AMOUNT DUE by 08/11/06.  If we do not receive the amount due within 30 days from the date of this notice, we may file a state tax lien against your property per Government Code Section 7171.

*Id.*  After receiving the letter, the debtor called her attorney.  *Id.*  Her attorney called the FTB who explained the debtor only owed the penalty if she dismissed her bankruptcy case.  *Id.*

The debtor sued the FTB for sanctions, contending the letter violated the automatic stay.  *Id.* at 2.  This Court rejected the claim that notifying a debtor of charges violated the stay.  *Id.*  It focused on whether FTB's reference to obtaining a lien was coercive or harassing. It reasoned informing a debtor of the FTB's right to obtain a lien was not coercive or harassing because the phrases "could" or "may", as opposed to "will", "cannot be characterized as an attempt to confiscate [the debtor's] property, and [the debtor] did not have to do anything to protect her interests[.]"  *Id.*  The Court noted the debtor was able to resolve her misunderstanding by a simple phone call.  *Id.*

The same situation existed below.  BCOA sent the Statements "for informational purposes only."  Even absent the overlay, the Statements were at most demands for payment with no threat to obtain a lien or other coercion.  *Morgan* excepts "mere demands for payment" from Section 362(a)(6)'s scope.  However, the bankruptcy court determined *any* demand for payment violates the stay, and held the Statements-violated the stay. Mem. Dec'n. at 17:11-13.

The bankruptcy court applied its incorrect standard to nearly all communications between Appellants and Parker.  The Statements included charges

19

and the Overlay.  Trial Exs. 16-17.  As in *Diwa*, their only prose was mandated state law disclosures at each page bottom.  *Id.*  These disclosures lack any suggested immediate action.  They state, "CC&R 6.6.4 *allows* the BCOA to levy" costs and "CC&R section 6.6.2 *enables* the Association to sell a member's property … to satisfy the lien present against it[.]"  *Id.*  Hence, the bankruptcy court "ignores that 'mere requests for payment' do not violate the automatic stay."  *Diwa*, 2007 WL 1462398 at 2.  If anything, the Statements are less harassing than FTB's all-caps "PAY THE FULL AMOUNT DUE by 08/11/06" otherwise "we may file a state tax lien against your property" found to be non-coercive in *Diwa*.  The bankruptcy court also asserted an emailed letter sent with one statement violated the stay because it, "demand[ed] immediate payment" by stating, "Please provide full payment at this time."  Mem. Dec'n. at 13:6-7; Trial Ex. I.  However, that letter contains the same informative language contained in the Statements.  Trial Exs. 16-17.

As in *Diwa*, a phone call from Parker would have cleared her confusion, but "Parker and her attorneys remained mute."  Mem. Dec'n. at 9:17.[6]

## 2. The Disciplinary Fines and Retro-Assessment Did Not Violate the Stay

The bankruptcy court incorrectly found issuing and informing Parker of "Disciplinary Fines" violated the stay.  Mem. Dec'n. at 14:24-25.  Without any supporting trial evidence, it inexplicably found the fines to be based on pre-petition conduct, and categorically ruled the "post-petition imposition of fines for pre-petition CC&R violations therefore violated the stay."  *Id.*

However, the Court erred.  *Goudelock* only addressed regular monthly assessments were dischargeable, "monthly [HOA] assessments would continue to accrue based upon *Goudelock's* continued ownership of the condominium unit.  Thus,

---

[6]    Although irrelevant to the application of controlling precedent, the bankruptcy court made the unwarranted assumption BCOA sent the Statements to harass Parker.

*Goudelock's in personam* obligation to pay [HOA] assessments arose prepetition when she purchased the condominium unit." *Id* at 638.   The undisputed trial evidence established that Appellants assessed the fines based upon post-petition findings of post-petition violations inclusive of failure to maintain the Property and failure to comply with the CC&Rs.  All of which would not have been within the fair contemplation of the parties.  Cf. *O'Loghlin v. County of Orange*, 229 F.3d 871, 875 (9th Cir. 2000) (distinguishing claims arising from a debtor's voluntary postpetition conduct from dischargeable prepetition claims); *Camelback Constr. v. Castellino Villas, A.K.F. LLC (In re Castellino Villas, A.K.F. LLC)*, 836 F.3d 1028, 1036 (9th Cir. 2016) (same).  Such fines are still non-dischargeable, even after *Goudelock.  In re Foster,* 435 B.R. 650 (9th Cir. BAP 2010).

The Court also failed to consider whether any such fines were more than a mere demand for payment.  *See Morgan*, 804 F.2d at 1491.  For example, it found the "retro-assessment" invoice violated the automatic stay because, without more, it "demand[ed] payment of the retro-assessment."   Mem. Dec'n. at 16:8-9.   The bankruptcy court applied this flawed reasoning to the Disciplinary Fine invoices as well.  Thus, the bankruptcy court contravened *Morgan's* "mere demand" safe harbor.

The bankruptcy court was bound to apply both *Morgan's* test and its reasoning. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003).  Its failure to do so compels reversal.

### 3.   The Settlement Letters Did Not Violate the Stay

Good faith settlements negotiations are also not stay violations.  *See In re Diamond*, 346 F.3d 224, 227 (1st Cir. 2003); *In re House*, No. 16-51076-KMS, 2017 WL 2579026, at *4 (Bankr. S.D. Miss. June 14, 2017) ("'good faith negotiation' does not willfully violate the stay."); *In re Keaty*, 350 B.R. 723, 726 (Bankr. W.D. La. 2006).

DM3\6115181.1

OPENING BRIEF ON APPEAL OF APPELLANTS BAYSIDE COURT OWNERS ASSOCIATION, LAURENCE JENNINGS, RAJ PATEL, JUSTIN HU, LAWRENCE DROUIN AND ANDREW CANTOR

BCOA sent the Settlement Letters to Fong in good faith. They end: "We are confident there is a viable way to resolve the Unit 990 problem – if there is a true willingness to negotiate in complete good faith…" Trial Exs. E, BX. The bankruptcy court legally erred by finding only settlements pertaining to "[r]eaffirmation agreements" are not "stay violations". Mem. Dec'n. at 12:1-2. Case law permits all good faith settlement negotiations during the automatic stay. *See Keaty*, 350 B.R. at 726; *Diamond*, 346 F.3d at 227. Also, it made the completely unsupported finding Appellants sent Fong settlement offers in "an attempt to make Parker's life miserable", even though such offers were not sent to Parker. Mem. Dec'n. at 12:23-24; Trial Tr., ECF No. 273, at 7:2-5. The bankruptcy court failed to explain how it drew such an inference.

Because the bankruptcy court's holding was unsupported by law or evidence, the Court should find the Settlement Letters did not violate the stay.

### E.  The Bankruptcy Court Erred by Imposing $39,000 in Damages For Lost Rents

The bankruptcy court improperly sanctioned Appellants $39,000.00 for rents obtained from the Property.

A chapter 13 plan may provide for secured debt by surrendering the property to the secured creditor. 11 U.S.C. § 1325(a)(5)(C); *Till v. SCS Credit Corp.*, 541 U.S. 465, 468 (2004). Parker chose to surrender the Property, on Plan confirmation. Plan, ECF No. 45, § 2.06. After confirmation, the Property was no longer subject to the stay. 11 U.S.C. § 1327(b); 11 U.S.C. § 362(c)(1); *see, e.g.*, *In re Madison*, 249 B.R. 751, 758 (Bankr. N.D. Ill. 2000). There is little doubt that surrender terminates the estate's rights to the property. "When a debtor surrenders the property, a creditor obtains it immediately, and is free to sell it and reinvest the proceeds." *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 962 (1997). "[T]he word 'surrender' means the relinquishment of all rights in property, including the possessory right, even if

DM3\6115181.1

OPENING BRIEF ON APPEAL OF APPELLANTS BAYSIDE COURT OWNERS ASSOCIATION, LAURENCE JENNINGS, RAJ PATEL, JUSTIN HU, LAWRENCE DROUIN AND ANDREW CANTOR

such relinquishment does not always require immediate physical delivery of the property to another." *In re White*, 487 F.3d 199, 205 (4th Cir. 2007); *see also Razzak v. Wells Fargo Bank, N.A.*, No. 17-CV-04939-MMC, 2018 WL 1524002, at *4 (N.D. Cal. Mar. 28, 2018); *In re Tikhonov*, No. BAP CC-11-1698, 2012 WL 6554742, at *5 (B.A.P. 9th Cir. Dec. 14, 2012). "[S]urrender under 1325 requires at a minimum the surrender of all of the rights that the debtor has." *In re Ware*, 533 B.R. 701, 712 (Bankr. N.D. Ill. 2015).

Parker surrendered the Property on December 17, 2014. After that date, she had no further rights in the property. This included Parker's right to receive rents from the Property. BCOA could not be liable for any stay violations for leasing the Property because Parker had no rights to the rent for the stay to protect. Thus, the bankruptcy court incorrectly sanctioned Appellants $39,000 for rents BCOA received and held for the senior lender for leasing the Property after Parker's surrender. The bankruptcy court, without legal support, reasoned Parker "was entitled to have some control over who, if anyone, occupied the premises" and BCOA's subletting "violated the stay and interfered with her property rights to Unit 990." Mem. Dec'n. 30:7-9. It completely ignored the legal effect of Parker's surrender. Parker was not entitled to the Property's rents after surrendering the Property.

The bankruptcy court found surrender had too narrow an effect. It even encouraged Parker's attempt to use her surrender as a negotiation tactic.[7] Mem. Dec'n. at 23:224.

Further, BCOA rented the Property pursuant to permitted *in rem* remedies provided under the CC&Rs. Parker, through proxy, even voted for this measure.

Thus, the bankruptcy court's award of $39,000 merits reversal.

---

[7]   At trial, Parker admitted that she fought quitclaiming the Property to BCOA after surrender as "it didn't make sense" because she could still pursue a sale on her own. Trial Tr., ECF No. 273, 100:17-101:1.

## VI.    THE BANKRUPTCY COURT ERRONEOUSLY AWARDED EMOTIONAL DISTRESS DAMAGES.

The bankruptcy court abused its discretion by contravening controlling precedent to find Parker's uncorroborated and self-serving testimony sufficient to award damages for emotional distress.   While "many of BCOA's offending documents were not sent directly to Parker", the bankruptcy court nonetheless awarded Parker $5,000.  Mem. Dec'n. at 19:19-21.  It erred because Parker: (a) failed to provide evidence she suffered the type of emotional distress compensable under Section 362(k); and (b) waived her right to testify by failing to include the relevant claims in the JPO.  *Id.*

### A.    Parker Failed to Introduce Evidence Showing She Suffered "Significant Harm."

Controlling precedent limits awarding emotional distress damages to extraordinary situations:  "an individual must (1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, "from the anxiety and pressures inherent in the bankruptcy process."  *Snowden v. Check into Cash of Washington, Inc. (In re Snowden)*, 769 F.3d 651, 657 (9th Cir. 2014) (quoting *Dawson*, 390 F.3d at 1148) (stating the causal link between the emotional distress and the contumacious conduct must be "clearly established or readily apparent").

Parker never demonstrated she suffered harm, let alone significant harm.  In *Snowden*, a creditor made a number of harassing phone calls to Snowden at the hospital, and used an "electronic funds transfer to debit Snowden's bank account for the  amount due, overdrawing her account by $816.88, including bank charges."  *Id.* at 654-55.  In *Sternberg v. Johnston*, 595 F.3d 937, 941 (9th Cir. 2009), a state court held the debtor in contempt and granted judgment for his ex-wife in the amount of $

87,525.60.  It ordered the debtor to "pay the judgment by August 1, 2001," or *be jailed* "until the full amount . . . is paid." *Id*.  The bankruptcy court acknowledged this requirement in *In re Rodriguez*, No. 18-10674 CN, 2019 Bankr. LEXIS 1498, at *2 (Bankr. N.D. Cal. May 13, 2019), where a creditor emptied the debtor's checking and savings accounts of their combined $236.41 balance, causing a $35.00 overdraft fee. *Id*.

This case is nothing like those.  Parker was not subject to court orders because of Appellants' actions.[8]  Parker has not even alleged any medical expenses.  Parker voluntarily surrendered the Property.

Moreover, Parker failed to provide sufficient evidence of emotional distress. Mere self-serving testimony is insufficient.  In emotional distress damages a claimant must: (1) support her claim with medical evidence; (2) produce corroborating testimony; or (3) show her emotional distress was "readily apparent even without corroborative evidence." *Dawson*, 390 F.3d at 1150.  Emotional distress is "readily apparent" if the violator "engaged in egregious conduct" or "the circumstances make it obvious that a reasonable person would suffer significant emotional harm." *Id.* "Fleeting or trivial anxiety or distress does not suffice to support an award; instead, an individual must suffer significant emotional harm." *Id*.  *Dawson* cited only one example of self-evident egregious conduct, recounting, "when a creditor entered the debtor's home at night, doused the lights, and pretended to hold a gun to the debtor's head." *Id*.  In *Snowden*, 769 F.3d at 657, the Ninth Circuit affirmed emotional distress damages where: (1) the creditor made repeated collection telephone calls to the debtor's workplace, giving the debtor the impression her daughter was in an accident; (2) each time the creditor called, the debtor was forced to deal with the stress of leaving her patient unattended; and (3) the creditor cashed a check post-

---

[8]    The bankruptcy court held Appellants did not violate the stay with respect to the Alameda Action. *Parker*, 576 B.R. at 9.

bankruptcy causing the debtor overdraft fees, and preventing the debtor from purchasing promised tennis shoes and a haircut for her daughter.   Even so, the damages awarded were only $12,000. 769 F.3d at 655.

By contrast, Appellants: (1) sent two informational letters to Parker's counsel regarding the unpaid delinquency; (2) assessed, but never collected, routine post-petition HOA fees; and (3) re-rented the Property *after Parker's surrender* (and proxy approval of the leasing).   Appellants' actions were neither egregious nor the type of conduct that would cause a reasonable person harm.   Parker faced no additional financial strain or lawsuits.   She was not forced to apologize to a loved one or fail to care for a patient.   Parker's fleeting anger, anxiety, and depression, were insufficient to support an emotional distress award.

### B.   Rule 16 Precludes Parker's Testimony Regarding Emotional Distress.

A pretrial order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d).   It "supersedes the pleadings, and the parties are bound by its contents."   *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 950 (9th Cir. 1993). Hence, "parties are bound by their agreement to limit the issues to be tried."   *United States v. Joyce*, 511 F.2d 1127, 1130 n. 1 (9th Cir. 1974).   The JPO states it "shall supersede the pleadings and govern the court of trial of this case, unless modified to prevent manifest injustice." JPO 16:9-11.

The JPO does not mention Parker's emotional distress as a fact or emotional distress damages as an issue to be litigated.   *Id.* at 14:9-15:4-27.   The JPO was the fourth attempt at a PTO; in none of the JPO nor in any of the three prior PTOs did Parker reference emotional distress damages.   ECF Nos. 232, 237, 243, and 259. Appellants objected at trial as soon as Fong sought Parker's emotional distress testimony.   Trial Tr., ECF No. 273, at 19:19-20:6.   The bankruptcy court overruled Appellants' objection as "just background."   *Id.* at 20:8.   Appellants reiterated their

DM3\6115181.1

26

OPENING BRIEF ON APPEAL OF APPELLANTS BAYSIDE COURT OWNERS ASSOCIATION, LAURENCE JENNINGS, RAJ PATEL, JUSTIN HU, LAWRENCE DROUIN AND ANDREW CANTOR

objection after Fong asked Parker: "And did you have a reaction to this document when you reviewed the document back in December of 2014?"  Appellants argued, "there's no statement in our Listed Facts or Conclusions of Law that refer to any emotional distress, damages, and there's no foundational facts that are at issue in the JPO with respect to emotional distress." *Id.* at 26:16-22.  Appellants' attorney explained she had not prepared for such testimony because she relied on the JPO's scope.  *Id.* at 26:22-24.  This time, the bankruptcy court overruled the objection because "I think everyone agrees that the final product [the JPO] that I received isn't perfect, but I'm allowed to conform the pleadings to the facts." *Id.* at 27:13-15.

However, the bankruptcy court did not follow Rule 16, requiring manifest injustice to amend the JPO.  Fed. R. Civ. P. 16(d).  It decided to "conform the pleadings to the facts" based on its assertion that the JPO wasn't "perfect[.]" *Id.*  The bankruptcy court never made such finding, nor was there any basis to do so.  Instead, the bankruptcy court offered strained explanations, acknowledging Parker omitted emotional distress damages, but: (a) the parties agreed Parker should have mitigated her damages; (b) such "a statement naturally infers that BCOA intended to object to Parker's damages demand"; (c) "emotional distress damages are one component" of actual damages; and (d) therefore, the "JPO contemplates the need for this court to determine" emotional distress damages.  Mem. Dec'n. at n. 20.  Appellants should be excused from being subjected to this flawed, post-hoc justification.  Appellants reasonably assumed based on Parker's omission of emotional distress from the JPO that it would not be a trial issue.

Though immaterial due to the minimal evidence Parker presented, the bankruptcy court did not allow Appellants to prepare for this argument, and the damages, hence it merits reversal.

OPENING BRIEF ON APPEAL OF APPELLANTS BAYSIDE COURT OWNERS ASSOCIATION, LAURENCE JENNINGS, RAJ PATEL, JUSTIN HU, LAWRENCE DROUIN AND ANDREW CANTOR

## VII.   PUNITIVE DAMAGES ARE UNWARRANTED

Section 362(k) authorizes punitive damages "in appropriate circumstances." *Id*. Traditional standards govern the "appropriate circumstances" inquiry. *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 228 (9th Cir. 1989). "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 538 (1999) (citations omitted).

The bankruptcy court did not find Appellants acted with the requisite mental state.  It found "BCOA believed that the automatic stay did not apply to its 2015 HOA assessments, and its belief, … was held in good faith." Mem. Dec'n. at 27:13-15.  That finding precludes awarding punitive damages.  Moreover, it acknowledged Parker presented *no evidence* that BCOA knew its disciplinary fines were rooted in prepetition conduct.  *Id.* at 27:16-17.  Unlike in *Bloom*, Parker failed to notify Appellants she believed they were violating the stay, instead she "remained mute." *Id.* at 9:17.  Nearly all of Appellants' acts occurred after Parker surrendered the Property and the entry of the Relief Order.  Although Appellants put substantial evidence in the record as to their intent, and Parker put none in the record, the bankruptcy court failed to consider Appellants' mental state; its ruling lacks any factual support.

Thus, the bankruptcy court's punitive damages award should be reversed.

## VIII.   THE BANKRUPTCY COURT ERRED BY ASSESSING LIABILITY ON BCOA'S OFFICERS

### A.   The Individual Appellants Performed Corporate Duties with Reasonable Care, Precluding Liability.

The bankruptcy court found Jennings and Patel (collectively, "Individual Appellants") liable despite all their actions being in the performance of their duties as

DM3\6115181.1

28

OPENING BRIEF ON APPEAL OF APPELLANTS BAYSIDE COURT OWNERS ASSOCIATION, LAURENCE JENNINGS, RAJ PATEL, JUSTIN HU, LAWRENCE DROUIN AND ANDREW CANTOR

BCOA's officers.  Liability for actions as an officer of a non-profit is limited by Cal. Corp. Code § 7231.5.  It bars such liability.

Applicable California law shields directors and officers from such liability so long as the officer (i) performs the duties in good faith; (ii) in a manner the officer believes to be in the corporation's best interests; and (iii) with the care an ordinary prudent person in a like position would use under similar circumstances.  Cal. Corp. Code § 7231.5.  This statute codifies the business judgment rule.  *Palm Springs Villas II Homeowners Assn., Inc. v. Parth*, 248 Cal.App.4th 268, 279 (2016).  Under it, courts "give directors a wide latitude in the management of the affairs of a corporation provided always … an honest, unbiased judgment, is reasonably exercised by them."  *Burt v. Irvine Co.*, 237 Cal. App. 2d 828, 853 (1965).  "Every presumption is in favor of the good faith of the directors."  *Id.* at 852.  Prior to *Goudelock*, the majority of courts found a "debtor's obligation to pay the HOA dues was a function of owning the land with which the covenant runs and not from a prepetition contractual obligation."  *In re Foster*, 435 B.R. 650, 660 (B.A.P. 9th Cir. 2010).  Moreover, *Goudelock* left unaltered the principle that BCOA could enforce its *in rem* rights after discharge.  *Id.* at 638.  Hence, the Individual Appellants acted in good faith, in BCOA's best interests, and with reasonable care in following the applicable law.

Patel, Drouin and Jennings each testified that all board decisions, including each reviewed by the bankruptcy court, met the "BAMBI" rule: Bayside Average Member Best Interest.  Under BAMBI, directors must "look out for the average member best interest and to make sure that when we were making decisions we were looking out for the HOA as a whole."  Trial Tr., ECF No. 290, at 518:13-17; *see also id.* at 631:20-22; 477:12-13; 631:10-12; 256:7.  Further, the Individual Appellants complied with the Act and the CC&Rs, both in assessing payments and informing Parker of those assessments.  BCOA gave Parker every required notice and every

opportunity to respond to each post-petition charge against her account.  *See* Trial Exs. 47, 48, and I.  The Individual Appellants reasonably believed their assessments lawful because they complied (and continue to comply) with widely-accepted law.  Moreover, the bankruptcy court did not find any Individual Appellants acted unreasonably.  Instead, it found "respondents had a good faith belief that Parker was liable for the post-petition HOA assessments."   Mem. Dec'n. at 26:19; 27:6-7. Thus, the individual sanctions are inexplicable.

Consequently, the individual sanctions should be reversed.

**B.**    **Section 362 Does Not Preempt California Law Protecting Directors and Officers.**

To support its finding of individual liability, the bankruptcy court made the unprecedented holding that Cal. Corp. Code § 7231.5 protection is "constitutionally preempted by Bankruptcy Code § 362(k)."  Mem. Dec'n. at 23:4.

No other court has ever held the protection of directors and officers to be preempted by Section 362(k).  The reason is clear.  To find preemption, a court must find it is (i) express, which the Bankruptcy Code does with wording such as "notwithstanding otherwise applicable law", *see* 11 U.S.C. §§ 1123(a), 362(l), and 1142(a); (ii) Congress intended to occupy the field; or (iii) state law irreconcilably conflicts with Congress's intent.  *Hillsborough Cty. v. Automated Medical Labs., Inc.*, 471 U.S. 707, 712 (1985) (citations omitted).   "In considering a preemption claim, we look first to the intent and sweep of the federal statute."  *Baker & Drake, Inc. v. Public Serv. Comm'n (In re Baker & Drake, Inc.)*, 35 F.3d 1348, 1353 (9th Cir. 1994).   Courts "have never assumed lightly that Congress has derogated state regulation, but instead have addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law."  *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995).   To determine congressional purpose, the Court must "look to the

DM3\6115181.1

OPENING BRIEF ON APPEAL OF APPELLANTS BAYSIDE COURT OWNERS ASSOCIATION, LAURENCE JENNINGS, RAJ PATEL, JUSTIN HU, LAWRENCE DROUIN AND ANDREW CANTOR

statute's language, structure, subject matter, context, and history -- factors that typically help courts determine a statute's objectives and thereby illuminate its text." *Almendarez-Torres v. United States*, 523 U.S. 224, 229 (1998).  Even if preemption is present, a Court must give the federal statute "a fair but narrow reading which will give effect to Congress' purpose without undermining the strong presumption against pre-emption." *Michael v. Shiley, Inc.*, 46 F.3d 1316, 1322 (3d Cir. 1995).

State law defines property interests unless there is an actual conflict with the Bankruptcy Code.  *Butner v. United States*, 440 U.S. 48, 55 (1979).  "[I]t has been settled from an early date that ... state laws are thus suspended only to the extent of actual conflict with the system provided by the Bankruptcy Act of Congress."  *Id*. at n. 9.  Contractual rights are also determined under state law.  *See, e.g., In re Bristol Associates, Inc.*, 505 F.2d 1056, 1059 n. 4 (3d Cir. 1974); *Bogus v. American National Bank of Cheyenne, Wyo.*, 401 F.2d 458 (10th Cir. 1968); *Paramount Finance Co. v. U. S.*, 379 F.2d 543 (6th Cir. 1967).  A presumption against preemption applies in areas in which the states have traditionally occupied.  The party seeking to establish preemption bears a "considerable burden" of overcoming the presumption.  *DeBuono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997).  Thus, to displace traditional state regulation the federal purpose must be "clear and manifest".  *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544 (1994).  The presumption applies to bankruptcy law.  *Pacific Gas & Elect. Co. v. State of California*, 350 F.3d 932, 943 (9th Cir. 2003) ("*PG&E II*").  "Otherwise, the Bankruptcy Code will be construed to adopt, rather than to displace, pre-existing state law."  *BFP*, 511 U.S. at 544-545.

Congress evinced no intent to invalidate state corporate governance laws protecting directors and officers by enacting Section 362(k); such laws do not interfere with the purpose of Section 362.  *Davis v. Yageo Corp.*, 481 F.3d 661, 679 (9th Cir. 2007) ("Simply put, state corporate governance law, not federal bankruptcy

law, governs the duties of a corporate fiduciary.").  Section 362(k) invalidates Cal. Corp. Code § 7231.5 only if compliance with both were to prove impossible or "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Hillsborough*, 471 U.S. at 713.  Corporate governance laws have no effect on that purpose.  Any debtor injured by a corporation can obtain recompense from the injuring corporation.  If a director or officer were to act outside the corporate purpose by, for example, intentionally injuring a debtor then such director or officer is not acting on behalf of the corporation and the injured debtor can sue the director or officer.  In either case, the debtor is compensated, and Cal. Corp. Code § 7231.5 does not stand as an obstacle to the debtor obtaining compensation. The bankruptcy court made no finding that BCOA's directors and officers acted outside of their proper scope.  Hence, the only damages available, if any were appropriate, were from BCOA itself.

Because there is no basis for imposing liability on the Individual Appellants, it merits reversal.

## IX.    THE UNREASONABLE ATTORNEYS' FEES AWARD

On March 2, 2019, Fong submitted a fee application claiming they spent 1,220.8 hours litigating a consumer stay relief motion.  Application for Attorney's Fees and Costs Under 11 U.S.C. § 362(k)(1) ("Fee Application"), ECF No. 302, at 8:14-19.  In it, Parker requested attorneys' fees of $438,890.00.  *Id.* at 8:21.  The bankruptcy court awarded Fong $369,346.90 in fees and $9,770.05 in costs.  Order Awarding Fees and Costs, ECF No. 315 ("Fee Award").

The bankruptcy court erred in awarding Fong's fees by failing to: (1) explain the Fee Award adequately; (2) distinguish between compensable Section 362(k) pursuits and non-compensable efforts to recover on Parker's failed contempt claims; and (3) reduce fees based on Parker's failure to mitigate damages by quitclaiming the Property.  Summary judgment resolved most of the stay violation issues.  *See Parker*,

576 B.R. 1.  The fee award is excessively high for a consumer stay-violation motion that did not require evidentiary findings.  Because Parker failed to show any injuries from stay violation, she is not entitled to any attorneys' fees, or is entitled only to attorneys' fees for injuries arising from stay violations surviving this appeal.

**A.**     **The Bankruptcy Court Improperly Awarded Nearly $370,000 in Fees.**

The bankruptcy court improperly failed to find Fong attorney's fees to be reasonable before granting the award.

"In setting a reasonable attorney's fee, the district court should make specific findings of the rate and hours it has determined to be reasonable."  *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989).  An award that is "conclusory and unsupported by any analysis" is insufficient.  *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984).  A court must conduct a "detailed review".  *Id.*; *see also* Fed. R. Bankr. P. 7052.

The bankruptcy court inexplicably reviewed approximately only $90,000 of Fong's requested attorneys' fees out of $438,890.  Those fees consisted of only five tasks: (1) 160 hours for drafting the initial motion; (2) objecting to claims during the bankruptcy case, *which were unrelated to the stay violation litigation*; (3) fees in connection with the JPO *for which the bankruptcy court actually sanctioned* Fong; (4) fees for preparing excluded expert witnesses; (5) 40 hours to prepare a settlement brief; and a general miscellaneous section where the bankruptcy court simply deducted three percent across the board, but failed to analyze the entries.  Fee Award at 5:2-3.

While it analyzed these five tasks, the bankruptcy court made no mention of the reasonableness of the remaining $348,890 fee award.  It failed to justify its conclusory finding stating only, "this contested matter was hard fought, substantial litigation which addressed several novel issues.  The fee award is therefore reasonable."  *Id.* at 5:8-10.  Likewise, it summarily awarded *all* requested costs,

DM3\6115181.1

33

OPENING BRIEF ON APPEAL OF APPELLANTS BAYSIDE COURT OWNERS ASSOCIATION, LAURENCE JENNINGS, RAJ PATEL, JUSTIN HU, LAWRENCE DROUIN AND ANDREW CANTOR

except for excluded expert witness fees.  Mem. Dec'n. at 5:11-13.  This Court therefore has no basis to review adequately the bankruptcy court's conclusory approval of nearly $350,000 in fees.

Without specific reasonableness findings, the award merits reversal.

**B.**      **The Bankruptcy Court Awarded Fees For Non-Compensable Work.**

The bankruptcy court improperly awarded damages for work performed other than to enforce the automatic stay.  Section 362(k) allows attorneys' fees to enforce the stay and for "prosecuting an action for damages *under the statute*."  *Schwartz-Tallard*, 803 F.3d at 1101 (emphasis added).  The fees *must be limited* to those functions.  *Id*.  Any other award was error.

Parker sought to hold Appellants in contempt for stay and discharge violations. Fees for such claims must be awarded under Section 105, and only if the bankruptcy court were to find Appellants in contempt, which it did not.  Particularly egregious is its full award of attorneys' fees for trial.  At trial, the parties almost exclusively litigated contempt, not Section 362(k) claims.  As the bankruptcy court put it, "[s]imply, § 105 imposes a more difficult standard than § 362(k)."  *Parker*, 576 B.R. at 11.  Intent is immaterial for proving Section 362(k); Contempt claims depend on a "knowing violation of a court order[.]"  *Id.* at 25:12.

Thus, awarding fees for the extensive litigation of Appellants' intent was improper.  Fong included every discovery, deposition, trial preparation, contempt memorandum, and four and a half days of questioning Appellants' intent in its fee request under Section 362(k), where intent is irrelevant.  Declaration of Marlene A. Fong in Support of Application by Sarah-Jane Parker for Attorney's Fees and Costs under 11 U.S.C. § 362(k)(1), ECF No. 305.  These four and a half days were neither reasonable nor necessary towards prosecuting Section 362(k).

Hence, those fees merit reversal.

DM3\6115181.1

34

OPENING BRIEF ON APPEAL OF APPELLANTS BAYSIDE COURT OWNERS ASSOCIATION, LAURENCE
JENNINGS, RAJ PATEL, JUSTIN HU, LAWRENCE DROUIN AND ANDREW CANTOR

### C.   <u>Parker Failed to Properly Mitigate Her Damages.</u>

Even if the bankruptcy court properly assessed the attorney work performed in prosecuting Parker's Section 362(k) claims (which it did not), it did not weigh Parker's failure to mitigate damages in awarding fees.  "Unfortunately, fee shifting statutes, like § 362(h), have given debtors an opportunity to use the statute as a sword rather than a shield, to courts' dismay." *Roman*, 283 B.R. at 11 (Section 362(h) was the prior designation of Section 362(k)).  "[R]ewarding debtors too lavishly in § 362[k] actions will encourage a cottage industry of precipitous § 362[k] litigation." *In re Jones*, No. 15-01092, 2016 WL 936914, at *2 (Bankr. N.D. Cal. Mar. 10, 2016) (citation omitted).  Before a court awards attorney's fees, it must find them reasonable and necessary.  *Roman*, 283 B.R. at 11.  Consequently, bankruptcy courts must consider whether a debtor "could have mitigated" damages.  *Matter of Trupp*, 764 F. App'x 600, 601 (9th Cir. 2019).  Debtors fail to mitigate if they do not engage in good faith settlement discussions.  *Roman*, 283 B.R. at 13 (upholding fifty-percent fee reduction where the debtor "could have responded with a more reasonable counter-offer[.]").

Parker would have avoided all this litigation by adhering to her Plan and quit claiming the Property to BCOA, and by alerting Appellants to any purported stay violations.  If she had, Appellants would have assured her they were only seeking to enforce BCOA's *in rem* rights.  Appellants offered to accept Parker's quitclaim in December 2015.  Mem. Dec'n. at n. 11.  "Parker did not respond to the offer." *Id.* No attorney's fees after that offer were reasonable or necessary.

Appellants sent Parker a Statement in February 2015 showing "a zero balance as of 10/08/14."  Trial Tr., ECF No. 273, at 99:1; Trial Ex. 28.  When Appellants sent Parker the Statements (for which the bankruptcy court sanctioned Appellants over $400,000), she forwarded those emails to her attorneys with the caption, "FYI, S-J,

DM3\6115181.1

35

OPENING BRIEF ON APPEAL OF APPELLANTS BAYSIDE COURT OWNERS ASSOCIATION, LAURENCE JENNINGS, RAJ PATEL, JUSTIN HU, LAWRENCE DROUIN AND ANDREW CANTOR

:o)."[9]  Trial Ex. F.  Parker and her attorneys "remained mute."  Mem. Dec'n. at 9:17.

They never communicated with Appellants about alleged stay violations.  Stipulation,

ECF No. 263, at ¶¶ 1-11.  Had they, Appellants would have assured them they were

not attempting to collect any debt from Parker personally, just as they corrected the

one potential stay violation the very day it was brought to their attention in March

2015.   Most of the purported violations occurred by April 2015, yet when Parker

appeared at the April 2015 hearing, she said nothing about any purported violations.

A call to Appellants would have alleviated her concern that Appellants intended to

collect personally.

Notably, the bankruptcy court disregarded the Ninth Circuit's directive to

"eliminate unnecessary or plainly excessive fees."  *Schwartz-Tallard*, 803 F.3d at

1101.  It found Parker did nothing to mitigate damages but failed to consider that in

awarding fees:

> Parker did not respond to or challenge any of the invoices, notices or
> fines issued and/or imposed by BCOA, and she never demanded that
> BCOA refrain from issuing any more notices or assessments.  *Instead,
> Parker commenced this consolidated contested matter to recover
> damages and attorneys' fees*.

*Id.* at 9:18-21 (emphasis added).

The error in awarding fees despite Parker's failure to mitigate damage

mandates reversal.

### D.   Awarding Nearly $370,000 in Attorney's Fees Is Patently Unreasonable for a Consumer Stay Violation

Fong incurred facially unreasonable fees.

"Only an award of fees *reasonably* incurred is mandated by the statute[.]"

*Schwartz-Tallard*, 803 F.3d at 1101 (emphasis added).  Under Section 330, courts

evaluate several factors, including "the customary fee" and "awards in similar cases."

---

[9]    Parker can hardly argue she was emotionally harmed when she was conveying
the Statements to Fong with a smiley-face.

*Roman*, 283 B.R. at 11; *In re Manoa Fin. Co., Inc.*, 853 F.2d 687, 689 n. 1. (9th Cir. 1988); *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984) (remanding for determination of reasonable expenditure of hours and the prevailing fees for similar work).    Nearly $400,000 in fees and costs greatly exceeds the customary fee award in similar cases.  "The vast majority of sanctions related to violations of the stay result in fee awards of under $10,000." *In re Manley Toys Ltd.*, No. 16-15374 (JNP), 2018 WL 3213710, at *5 (Bankr. D.N.J. June 21, 2018), *aff'd*, No. CV 18-11465 (RMB), 2019 WL 3229301 (D.N.J. July 18, 2019).[10] "Even … where courts have noted either the complexity … or the opposing party's recalcitrance… the total fees rarely exceed a range of $20,000 to $30,000." *Id.* at *6 (collecting cases).[11]

The bankruptcy court awarded Parker over ***1,000 hours*** of attorneys' fees for prosecuting a strict liability stay violation.  *Roman* found *$2,000* excessive, *Id.*, 283 B.R. at 13, and *Eeds* found $1,440 reasonable after the creditor rebuffed a debtor's mitigation of damages, *Id.*, 2015 WL 1240344, at *6 (Bankr. D. Mont. Mar. 16, 2015).  The bankruptcy court shockingly awarded Parker 160 hours to draft her initial

---

[10]    *See In re McGowan*, 2014 WL 793125, at *2 (Bankr. D.N.J, Feb. 26, 2014) (awarding $3,000 for defending debtor in state court and for sanctions motion); *Renzulli v. Ullman (In re Renzulli)*, No. 15-01983-ABA, Dkt. No. 25, (Bankr. D.N.J. Dec. 22, 2015) (awarding $1,200 in attorney fees); *In re Nixon*, 419 B.R. 281, 283 (Bankr. E.D. Pa. 2009) (awarding $1,000 in attorney fees); *In re Parks*, 2008 WL 2003163, at *7 (Bankr. N.D. Ohio May 6, 2008) (finding $3,000 was reasonable); *In re Hall*, 518 B.R. 202, 212 (Bankr. N.D.N.Y. 2014) (reducing fee award to $755); *In re Warren*, 532 B.R. 655, 665-66 (Bankr. D.S.C. 2015) (reducing fees to $8,200; citing cases indicating similar awards).

[11]    *See In re Parker*, 515 B.R. 337, 351 (Bankr. M.D. Ala. 2014), *aff'd sub nom*, *Parker v. Credit Cent. S., Inc.*, 2015 WL 1042793 (M.D. Ala. Mar. 10, 2015), *aff'd sub nom*, *In re Parker*, 634 F. App'x 770 (11th Cir. 2015) (billing $21,055, and $30,000 total reasonable only in extraordinary circumstances); *In re Voll*, 512 B.R. 132, 145 (Bankr. N.D.N.Y. 2014) (reducing fees to $13,625 although debtor had to prove "emotional damages", and respondent engaged in extensive discovery); *In re Mocella*, 552 B.R. 706, 730 (Bankr. N.D. Ohio 2016) (reducing fees to $17,750 after "extensive litigation"); *In re Vaughn*, 2016 WL 836968, at *2 (Bankr. M.D. Ala. Mar. 3, 2016) (awarding $25,951.25, after noting necessity and length of litigation).

motion.  However, "attorneys rarely expend more than 10 - 20 hours preparing and arguing such motions." *Manley Toys Ltd.*, 2018 WL 3213710, at *5.[12]  A court has rejected a claim for only two hours to prepare a stay relief motion.  *In re Risner*, 317 B.R. 830, 838 (Bankr. D. Idaho 2004).

The Bankruptcy Court made few findings, so there is no explanation why it found $369,346.90 in fees reasonable.

### E.     Parker Is Not Entitled to Any Award Because She Cannot Show Either Injuries or any Stay Violations.

Section 362(k) authorizes courts to award attorneys' fees only for injured debtors "who prevail[.]"  *Schwartz-Tallard*, 803 F.3d at 1100.  The bankruptcy court incorrectly found Parker suffered two injuries: (1) $5,000 in uncorroborated emotional distress damages; and (2) $39,000 obtained from rent--after Parker surrendered her right to rental proceeds.  Neither is warranted.  Argument §§ V.E, VI., *supra*.  Appellants did not injure Parker; she is not entitled *any* attorney's fees.

After the above reductions are properly accounted, if even one of the bankruptcy court's improper stay violation findings are reversed, Parker's attorneys' fees must be reduced proportionately.  *Cf. Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("[W]ork on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'") (abrogated on other grounds by *Tex. State Teachers Assoc. v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989)).

### CONCLUSION

WHEREFORE Appellants respectfully request the Court reverse the bankruptcy court's Judgement, or, in the alternative, reverse the punitive, emotional distress, and property interference damages and reduce Appellee's fee award

---

[12]     *See*, *e.g.*, *Renzulli*, No. 15-01983-ABA, Dkt. No. 25, (Bankr. D.N.J. Dec. 22, 2015) (attorney compensated for 4 hours); *Nixon*, 419 B.R. at 283 (4 hours reasonable); *Hall*, 518 B.R. at 211 (Bankr. N.D.N.Y. 2014) (reducing hours on motion to 5.7).

proportionately with the stay violation findings in accordance with the case law and facts discussed herein.

Dated:  October 4, 2019

DUANE MORRIS LLP

By:  /s/ Aron M. Oliner
Aron M. Oliner
Jeff D. Kahane
Mohammad Tehrani

Attorneys for Appellants
Bayside Court Owners Association,
Laurence Jennings, Raj Patel, Justin
Hu, Lawrence Drouin, and Andrew
Cantor

DM3\6115181.1

39

OPENING BRIEF ON APPEAL OF APPELLANTS BAYSIDE COURT OWNERS ASSOCIATION, LAURENCE JENNINGS, RAJ PATEL, JUSTIN HU, LAWRENCE DROUIN AND ANDREW CANTOR

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. Bankr. P. 8015(h), I certify that:

This brief complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7) because this brief contains 12,769 words, excluding the parts of the brief exempted by Fed. R. Bankr. P. 8015(g).

Dated:  October 4, 2019

DUANE MORRIS LLP

By:  /s/ Aron M. Oliner
Aron M. Oliner
Jeff D. Kahane
Mohammad Tehrani

Attorneys for Appellants
Bayside Court Owners Association,
Laurence Jennings, Raj Patel, Justin
Hu, Lawrence Drouin, and Andrew
Cantor

This brief complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type style requirements of Fed. R. Bankr. P. 8015(a)(6) because this brief has been prepared in a proportionately spaced typeface using  Times New Roman 14-point font.

DM3\6115181.1

40

OPENING BRIEF ON APPEAL OF APPELLANTS BAYSIDE COURT OWNERS ASSOCIATION, LAURENCE JENNINGS, RAJ PATEL, JUSTIN HU, LAWRENCE DROUIN AND ANDREW CANTOR