No. 4:19-cv-02588-YGR

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA AT OAKLAND

Chapter 13 Bankruptcy Case No. 14-44083 CN13

In the Matter of:
SARAH-JANE PARKER,
Debtor.

---

BAYSIDE COURT OWNERS ASSOCIATION, ET AL,
Appellants and Cross-Appellees,

v.

SARAH-JANE PARKER,
Appellee and Cross-Appellant.

---

Appeal from the United States Bankruptcy Court
for the Northern District of California
Hon. Charles Novack

———————————

**APPELLEE'S REPLY BRIEF ON CROSS-APPEAL**

———————————

Marlene A. Fong, SBN 111560.
FONG & FONG, APC
2161 Harbor Bay Parkway
Alameda, California 94502
(510) 748-6800
marlene.fong@fonglaw.com

Christina L. Henry, WSBA 31273
*Appearing Pro Hac Vice*
HENRY & DEGRAAFF, P.S.
787 Maynard Avenue S
Seattle, Washington 98133
(206) 330-0595
chenry@hdm-legal.com

*Attorneys for Appellee/Cross-Appellant Sarah-Jane Parker*

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT ............................... 5

II. THE BANKRUPTCY COURT CLEARLY ERRED BY CUTTING OFF STAY VIOLATION DAMAGES AT THE TIME OF DISCHARGE. BCOA'S OPPOSTION FAILS TO SHOW HOW THIS WAS NOT ERROR. PREJUDICE TO PARKER IS PRESUMED, THUS REVERSAL IS MANDATORY FOR THIS ERROR OF LAW. ................................................. 6

    A. BCOA falsely claims that the controlling authority *Sundquist v Bank of America* was vacated and has no force as precedent. This statement is a deliberate untruth. *Sundquist* remains fully in force and indeed has been amplified by subsequent authority. ....................................................... 6

    B. BCOA does not dispute the central point of Parker's Cross Appeal that damages from stay violations continue to accrue despite a discharge order and are actionable under 362(k)(1)................................................. 8

    C. The error is highly prejudicial. BCOA does not argue it is not prejudicial. Prejudice is presumed on appeal......................................... 10

    D. None of BCOA's other theories is supported by authority, or logic or the facts of this case. ............................................................... 12

        1. Parker was protected by the automatic stay throughout the duration of the case. ........................................................................ 12

        2. "Surrender" is irrelevant to any issue on appeal. ............................ 13

        3. The stay relief order is irrelevant.................................................... 14

        4. There is no Section "362(c)." BCOA mistakes or ignores the two subparts of 362(c). ........................................................................ 15

        5. *Snowden* holds the stay violation continues until restitution is made. ................................................................................ 16

        6. The stay violation is the lease, a one-time event............................. 17

III. BCOA FAILS TO SHOW HOW THE SUPREME COURT'S TAGGART DECISION AND CASES FOLLOWING TAGGART DO NOT MANDATE REVERSAL AND REMAND ON PARKER'S DISCHARGE VIOLATION AND CONTEMPT CLAIMS. .......................................................... 17

    A. The United States Supreme Court in *Taggart* reversed the Court of Appeal and remanded the case for trial under the proper law. It did not "try" the case itself or suggest it could decide the facts based on the evidence from the earlier trial in the lower courts. This is the correct

outcome when the trial court has applied the wrong law and should be
the result here. .....................................................................................18

B.  Unsubstantiated and groundless legal theories do not constitute a "fair
ground of doubt" under *Taggart*. BCOA's bizarre theories do not come
close to what must be shown in order to avoid a finding of contempt. .21

C.  Prejudice is presumed when there is error. BCOA again wrongly and
misleadingly asserts the burden is on Parker to show prejudice. In any
case "prejudice" is manifest in the consequences of the court's
application of the wrong law. ................................................................22

D.  It does not matter what the bankruptcy court ruled on Parker's contempt
claims and whether BCOA's "beliefs" were "reasonable." The court
applied the wrong legal standard, a fact indisputable after *Taggart*. Its
conclusions based on a wrong standard are irrelevant on this appeal. ..23

E.  None of BCOA's argument about stay violation contempt is relevant in
light of *Taggart*. It does not matter what the court ruled when using a
wrong legal standard. Reversal is required. ...........................................24

F.  The bankruptcy court found that BCOA violated the discharge
injunction and the automatic stay. The issue on this appeal is that the
court applied the wrong law in ruling that those violations did not meet
the standard to impose contempt sanctions. The rulings must be
reversed and the correct standard under Taggart applied on remand. ...25

G.  The Supreme Court in *Taggart* did not make a "minor change" in the
law. *Taggart* completely overruled the short-lived standard for contempt
imposed by *Lorenzen* and effected a fundamental change in how
contempt is determined in cases of discharge violation. .......................26

III. CONCLUSION ...............................................................................................28

CERTIFICATE OF COMPLIANCE..................................................................29

CERTIFICATE OF SERVICE ..........................................................................29

## **TABLE OF AUTHORITIES**

**Cases**

*In re Ahn*, 794 F.App'x 661 (9th Cir. 2020) .......................................................20

*In re Bennett*, 298 F.3d 1059 (9th Cir. 2002) ....................................27

*In re Freeman*, 608 B.R. 228 (9th Cir. BAP 2019) ............................19

*In re Jeong*, 2020 WL 1277575 (9th Cir. BAP 2020) .................21, 25

*In re LeGrand*, 612 B.R. 604 (Bankr. E.D. Cal. 2020)...............passim

*In re Schwartz-Tallard*, 803 F.3d 1095 (9th Cir. 2015) (en banc) ....16

*In re Sundquist*, 580 B.R. 536 (Bankr. E.D. Cal. 2018) ......................7

*In re Zilog*, 450 F.3d 996 (9th Cir. 2006) .....................................21, 27

*Lorenzen v. Taggart* (*In re Taggart*), 888 F.3d 438 (9th Cir. 2018) .................18

*O'Neal v. McAninch*, 513 U.S. 432 (1995)........................................11

*Obrey v. Johnson,* 400 F.3d 691 (9th Cir. 2005) .............11, 22, 23, 25

*Snowden v. Check into Cash of Wash., Inc.*, 769 F.3d 651 (9th Cir. 2014) 2, 6, 9, 16

*Sternberg v. Johnson*, 595 F.3d 937 (9th Cir. 2010) ........................16

*Sundquist v. Bank of America*, 566 B.R. 563 (Bankr. E.D. Cal. 2017) .......passim

*Taggart v. Lorenzen*, 587 US __, 139 S. Ct. 1795, 204 L. Ed. 2d 129 (2019) .......................................................................................passim

**Statutes**

11 U.S.C. § 105 ....................................................................................8

11 U.S.C. § 362 ...........................................................................passim

11 U.S.C. § 524 ..................................................................................20

**Rules**

Fed. R. Bankr. P. 9011 .........................................................................8

# I. INTRODUCTION AND SUMMARY OF ARGUMENT

Sarah-Jane Parker proved conclusively in her cross appeal that the bankruptcy court made major errors of law that severely prejudiced Parker's rights, mandating reversal and remand. First, the court erred by not awarding stay violation damages for the entire time Parker's property was seized and detained by BCOA, contrary to well-established law. Second, the Supreme Court overruled the single case relied on by the bankruptcy court in its decision not to hold BCOA in contempt for its violations of the discharge injunction. Supreme Court reversal of prior law in a still-pending case mandates reversal and remand. Prejudice is presumed and the burden here is on BCOA to show lack of prejudice. In any event, the "prejudice" to Parker's rights is so obvious as to not need discussion.

Rather than responding to the issues and arguments in Parker's cross appeal, BCOA responds with a brief that amounts to a re-hash and re-litigation of the same points it raised in its opening brief on appeal. BCOA makes no coherent argument and fails to counter the indisputable law cited by Parker. BCOA also seriously misstates not only the law, but also the holding of the bankruptcy court and the facts proved at trial. On this state of the case, reversal is mandatory so that a full and fair trial can be conducted on the correct law.

## II. THE BANKRUPTCY COURT CLEARLY ERRED BY CUTTING OFF STAY VIOLATION DAMAGES AT THE TIME OF DISCHARGE. BCOA'S OPPOSTION FAILS TO SHOW HOW THIS WAS NOT ERROR. PREJUDICE TO PARKER IS PRESUMED, THUS REVERSAL IS MANDATORY FOR THIS ERROR OF LAW.

**A. BCOA falsely claims that the controlling authority *Sundquist v. Bank of America* was vacated and has no force as precedent. This statement is a deliberate untruth. *Sundquist* remains fully in force and indeed has been amplified by subsequent authority.**

*Sundquist v. Bank of America*, 566 B.R. 563 (Bankr. E.D. Cal. 2017), is the leading authority on the precise issue in this appeal. *Sundquist*, and later cases such as *In re LeGrand*, 612 B.R. 604 (Bankr. E.D. Cal. 2020) build on *Snowden v. Check into Cash of Wash., Inc.*, 769 F.3d 651 (9th Cir. 2014) to hold that damages for a stay violation accrue for so long as the violation continues to cause harm, regardless of a formal discharge order. Further, those cases hold that the stay violation continues to be actionable under 11 U.S.C. § 362(k)(1) for so long as the creditor continues to deny it violated the stay, and for so long as the creditor fails to make full restitution.

The force of this law is undeniable. Unable to contest the law, BCOA instead falsely asserts that *Sundquist* has been ***vacated*** and is no longer precedent: "Not only is *Sundquist* not controlling, *Sundquist was vacated and so 'has no precedental authority whatsoever.'"*(BCOA Reply 29:20-21; emphasis added.) This is inexcusable.

After the original opinion in 2017, *Sundquist* appellants Erik and Renee Sundquist settled with Bank of America for somewhere between $6 million and $9 million. The parties filed a motion asking the court to vacate the opinion and delete the case from the record. The court refused: "This motion to dismiss began as a hostage standoff. Bank of America, with a gun to the Sundquists' heads, said it would pay them several million dollars more than the $6,074,581.50 awarded to them, but only if this court first dismisses the adversary proceeding so as to vitiate the opinion in *Sundquist*. There being no legal obstacle to Bank of America paying the Sundquists without any judicial action, this was a naked effort to coerce this court to erase the record. No chance. No dice." *In re Sundquist*, 580 B.R. 536, 540 (Bankr. E.D. Cal. 2018) ["*Sundquist IV*"] (internal citation omitted). "To name and shame Bank of America on the public record in an opinion that stays on the books serves a valuable purpose casting sunlight on practices that affect ordinary consumers." (*Id*. at 545.) "The court agrees that the opinion should remain on the public record." (*Id*. at 553.) The court did honor the parties' settlement agreement on the amount of damages, and vacated that part of the decision, but none of the rest of it. "The adversary proceeding will not be dismissed. Nor will the opinion be withdrawn. [ ] The motion by the Sundquists and Bank of America to dismiss the adversary proceeding, vacate the opinion, and vacate the judgment will be DENIED." (*Id*. at 556) (emphasis in original).

For BCOA to argue to this court that "*Sundquist was vacated and so has no precedential authority whatsoever*" violates Fed. R. Bankr. P. 9011(b) and warrants sanctions under Fed. R. Bankr. P. 9011(c) and 11 U.S.C. § 105(a). The argument is not just wrong, but deliberately misleading, and should not have appeared in BCOA's papers. This is particularly so given the *LeGrand* decision from February 2020, in which the bankruptcy court cites and relies on the original 2017 *Sundquist* decision on the same point of law. Making untrue statements of fact and law to the court was a major reason why the *LeGrand* court imposed $25,000 in punitive damages for the post-discharge stay violations. *LeGrand*, 612 B.R. at 617–18.

## B. BCOA does not dispute the central point of Parker's Cross Appeal that damages from stay violations continue to accrue despite a discharge order and are actionable under 362(k)(1).

Parker's first assignment of error by the bankruptcy court is that the court found the lease of Parker's condominium in May 2015 to be a violation of the automatic stay, void ab initio as a device to collect a pre-petition claim, yet failed to apply the same logic and extend the finding to the continued collection of "rent" under that void lease after the December 1, 2015 discharge. (Parker March 6, 2020 Opening Brief on Cross Appeal, Doc. #23, hereafter "Parker brief," pages 50–55.) The court in effect found that the damages from that

singular pre-discharge act of entering into the lease ceased to accrue on the date the discharge issued. This is clear error and contrary to established law.

The precise issue in the present case was addressed in *In re LeGrand*, *supra*, discussed in Parker's brief at pgs. 53–54: "When, as here, a violation of the discharge injunction is merely continuation of pre-discharge conduct that violated the automatic stay, Sec. 362(k)(1) continues to provide stronger, more explicit, and more definite statutory remedies that are more adequate to the task than the least-possible-exercise-of-power restriction on civil contempt." *In re LeGrand*, 612 B.R. at 613. The 362(k)(1) remedies remain effective post-discharge "until the stay violation is purged by actual restitution." *Id.*, citing *Snowden,* 769 F.3d at 659, 662.

Thus, where an act or series of acts done pre-discharge continue to inflict harm on a debtor, the passage of the formal "discharge" is irrelevant. *Id.* Following well established tort principles, the harm is compensable for so long as the injuries continue to accrue from the original act. (*Sundquist*, 566 B.R. at 588–589.) All that followed after the May 19, 2015 lease flowed from that act, without further conduct by BCOA. The lease has a one-year term, and rent for the entire term can be collected in case of default. (Para. 3.0.) The lease automatically renews as a month to month at the end of the initial term. (Para. 4.0.) The tenant is liable for the balance of the rent in case of default. (Paras.

5.0, 13.0.) The lease, and the damages it would cause, were set in motion on the date of execution, May 19, 2015.

This was not a series of new violations, but a single violation, as found by the court, whose effects continued to harm Parker regardless of the discharge order. The court having found the lease to be a stay violation, and that Parker was entitled to the rental value of the property for the time it was detained by BCOA, there is no logical or legal basis to deny damages for the entire time the property was detained.

BCOA agrees this is the law. At page 30, line 1–17 of BCOA's brief BCOA acknowledges that stay violations can continue to cause compensable damages despite entry of the discharge. Thus there is no argument about what the law is, and indeed the law is too clear for such argument.

## C. The error is highly prejudicial. BCOA does not argue it is not prejudicial. Prejudice is presumed on appeal.

Application of the wrong law by the bankruptcy court was highly prejudicial. It deprived Parker of the ability to recover the $78,000 in rental value taken by BCOA post discharge, as well as other categories of damages including further emotional distress, further punitive damages, civil contempt damages for violation of the stay, and the attorney's fees incurred in stopping the continuing violation and prosecuting the claim for damages. BCOA was left with $78,000 in cash taken from Parker, which it retains to this day. BCOA

does not argue that such consequences are not prejudicial and does not even address the issue in relation to the stay violations.

Prejudice is presumed to exist. Normally error so obviously prejudices the rights of the victim of the error that no further finding beyond "error" is needed; reversal comes automatically. In "close cases" the reviewing court looks deeper, to evaluate whether the error clearly taints the decision of the lower court. In such cases, "We must reverse … unless it is more probable than not that the error did not materially affect the verdict. The party benefitting from the error has the burden of persuasion, and in cases of equipoise, we reverse." *Obrey v. Johnson,* 400 F.3d 691, 701 (9th Cir. 2005) (internal quotation marks omitted). "Thus, when reviewing the effect of erroneous evidentiary rulings, we will begin with a presumption of prejudice." *Id*. "Third, presuming prejudice, rather than harmlessness, is required by Supreme Court precedent." *Id*., *citing O'Neal v. McAninch*, 513 U.S. 432, 438–39 (1995).

Strangely, BCOA also cites *Obrey*, on the principle that prejudice must exist for an error to result in reversal, but omits to mention that prejudice is *presumed to exist* and that the burden is on *the party benefitted*, BCOA in this instance, to show the error did not taint the decision. (BCOA reply 32:13 to 33:2.) This kind of hide-the-ball tactic drew the ire of the court in *LeGrand*, contributing to the $25,000 punitive damages award. *LeGrand*, 612 B.R. at 617–18.

11

**D. None of BCOA's other theories is supported by authority, or logic or the facts of this case.**

**1. Parker was protected by the automatic stay throughout the duration of the case.**

BCOA continues to push the nonsensical contention that Ms. Parker was not protected by the automatic stay in any respect after her Chapter 13 plan was confirmed. BCOA made this contention in its brief on appeal, and it appears again in BCOA's reply at pages 27–28. The theory is that Parker's condominium revested in her upon plan confirmation, dropping out of the bankruptcy estate, and "thus" that the stay ended pursuant to § 362(c)(1) for all purposes. BCOA urges that *no stay was in force for the remainder of the case*, despite the provisions of § 362(c)(2) applying the stay to all conduct covered by the six subparts of § 362(a), including § 362(a)(5) and § 362(a)(6). Parker responded to this authority-free assertion in her answering brief at pages 17 and 24–27.

Section 362(a)(3) and (4) apply the stay to property of "the estate." § 362(c)(1) says *those* stays end when the property ceases to be property of the estate. § 362(a)(5) applies the stay to liens on property of the debtor, while § 362(a)(6) applies the stay to claims against the debtor. § 362(c)(2) says *those* stays only end upon discharge or termination of the case. The stay violation found by the bankruptcy court in this case was BCOA's acts "to collect, assess or recover a claim against the debtor that arose before the commencement of the

12

case under this title" in violation of § 362(a)(6). The court found that BCOA's lease of Parker's condominium was intended to recover the pre-petition assessment claims BCOA was determined not to "lose" to the bankruptcy. (Mem. Dec. 16:14 to 17:9; pg. 17 fn. 19.)

BCOA submits no authority supporting its bizarre view of the automatic stay. If there was a case anywhere holding that a Chapter 13 debtor is no longer protected by *any aspect* of the automatic stay after plan confirmation and revesting of assets in the debtor, BCOA would have cited it. None exist. A case holding that § 362(a)(6) does *not* apply to attempts to collect pre-petition claims would be cited if it existed. None does. BCOA's contention is contrary to the plain text of § 362(a)(6) and is self-refuting.

### 2. "Surrender" is irrelevant to any issue on appeal.

Nor is the "surrender" as part of the plan relevant. BCOA's arguments are just a rehash of the arguments made in its opening brief and do not respond to Parker's argument in her cross appeal that stay damages continue to accrue despite the discharge. This contention is refuted in Parker's reply at pages 25–27, but to reiterate, surrender in no way "terminated Parker's rights in the property" as BCOA asserts again at 19:19-20. The law in the Ninth Circuit and the Northern District of California is that surrender in a Chapter 13 plan has no meaning if the creditor chooses not to accept the surrender, as BCOA chose not

to do in this case. The law is too well established to be arguable. (Parker brief pgs. 25–26.)

Nor is Parker addressing the "different issue" of "whether a creditor can be forced to accept a surrendered property." (BCOA reply 19:24–25.) Parker does not make that argument, and the cases cited by Parker do not so hold and are not cited for such a made-up argument. The point Parker makes is that BCOA's groundless theory that it somehow became the owner of Parker's property despite not taking any action to obtain title and ownership is wrong. (Parker brief pgs. 25–27.) BCOA violated the stay by collecting personally against Parker on a claim that existed prior to commencement of the case. Under basic California property law and under the Bankruptcy Code Parker remained the owner of her condominium for all purposes until it was transferred to Deutsche Bank in December 2106 by an actual foreclosure and transfer of legal title. The bankruptcy court expressly so found. (Mem. Dec. 20:5-8.)

**3. The stay relief order is irrelevant.**

BCOA's stay relief motion in April 2015, in addition to being redundant and pointless, was very limited in scope, as the bankruptcy court pointed out. (Mem. Dec. pg. 13 fn. 15; pg. 17 fn. 19.) BCOA continues to insist this order somehow gave BCOA unlimited power over the property despite BCOA's failure to act on its state-law foreclosure rights. (BCOA reply 18:12-16, 28:20-

25.) This is just another re-litigation of BCOA's contentions in its opening brief, not a response to Parker's cross appeal.

If BCOA wanted to occupy and rent out real property owned by Parker it first needed to obtain title to the property. (Parker brief pgs. 24-27.) The bare theoretical right to commence foreclosure proceedings, without doing so, is not an estate in land under California law. BCOA does not cite any pertinent authority allowing it to seize and rent out property it doesn't own. Nor does BCOA explain how any part of the California Civil Code or the Association's CC&Rs give rise to such a non-existent power. (Parker brief pgs. 26–27.) Again, this line of argument does not show how stay violation damages do not continue to accrue despite entry of a discharge, or how the discharge is even relevant to the continued harm caused by the pre-discharge violation.

### 4. When citing section "362(c)" BCOA mistakes or ignores the section's three subparts.

Parker does not argue for "an exception to Section 362(c)," nor does the *Sundquist* decision address that issue, despite BCOA's odd argument on page 30 lines 1–17. Section "362(c)" as a whole is not at issue, is not discussed, and is not even mentioned in *Sundquist* or the later case *LeGrand*. In any event, 11 U.S.C. § 362(c) is not a monolithic entity; rather, it has three distinct subsections that have different purposes and subjects. BCOA is fixated on § 362(c)(1), apparently, but ignores the far more relevant § 362(c)(2), which

invokes the full range of § 362(a)'s subparts, to protect debtors and their property.

   **5.** *Snowden* **holds the stay violation continues until restitution is made.**

BCOA misrepresents what *Snowden* was about and what the central holding of the case actually is. (BCOA reply 30:18 to 31:5.) The central holding of *Snowden* is that the victim of a stay violation is entitled to all the attorney's fees incurred to end the violation, even under the then-current but since overturned rule of *Sternberg v. Johnson*, 595 F.3d 937 (9th Cir. 2010), *overruled by In re Schwartz-Tallard*, 803 F.3d 1095 (9th Cir. 2015) (en banc). *Snowden*, 769 F.3d at 661. In order to avoid the patently wrong holding of *Sternberg*, the *Snowden* court held that the stay violation was not "ended" until the violator made full restitution of all funds taken from the debtor. *Snowden*, 769 F.3d at 651, 659, 662. The *Snowden* court also held that the violation has not "ended" so long as the violator continues to deny it violated the stay. *Id*. at 559, 662. These points are discussed in Parker's reply brief at pgs. 53–55.

Ignoring these holdings in *Snowden* (and later cases such as *Sundquist* and its progeny), BCOA complains that "these cases did not determine that the automatic stay continues to apply beyond Section 362(c)'s limits." Not only was this not at issue nor discussed in *Snowden* or any other relevant case, Parker does not make that argument in the first place. The point is, when pre-discharge

stay violations continue to inflict harm without any new conduct past the date of the discharge, those "original sin" violations continue to be actionable under 362(k)(1). The formal expiration of the stay is irrelevant in such case, as the courts in *Sundquist* and *LeGrand* made clear.

### 6. The stay violation is the lease, a one-time event.

The stay violation found by the bankruptcy court was not "renting the property each month for six months after the discharge date" as BCOA asserts at 31:19-20, referencing the court's Memorandum Decision at page 9 line 7. There, the court simply remarked that BCOA collected rent on the property at the rate of $6,500 per month, as the lease provides. The court did NOT hold that the monthly rent collection was the stay violation. In fact, the court found the stay violation to be the *lease itself*, a one-time event on May 19, 2015: "BCOA's appropriation and leasing of Unit 990 violated the stay and interfered with her property rights to Unit 990. Its lease was void as a matter of law, and BCOA's conduct fostered a trespass on Parker's property." Memorandum Decision 20:8-10.

### III. BCOA FAILS TO SHOW HOW THE SUPREME COURT'S TAGGART DECISION AND CASES FOLLOWING *TAGGART* DO NOT MANDATE REVERSAL AND REMAND ON

# PARKER'S DISCHARGE VIOLATION AND CONTEMPT CLAIMS.

**A. The Supreme Court in *Taggart* reversed the Court of Appeal and remanded the case for trial under the proper law. It did not "try" the case itself or suggest it could decide the facts based on the evidence from the earlier trial in the lower courts. This is the correct outcome when the trial court has applied the wrong law and should be the result here.**

There can be no dispute that the bankruptcy court applied the wrong law to Parker's contempt claims arising from discharge and stay violations. The court applied the then-current Ninth Circuit standard established in *Lorenzen v. Taggart* (*In re Taggart*), 888 F.3d 438 (9th Cir. 2018), despite its very questionable holding, as it was bound by precedent to do. In *Taggart v. Lorenzen*, 587 US __, 139 S. Ct. 1795, 204 L. Ed. 2d 129 (2019), the Supreme Court quickly struck down the Ninth Circuit's holding, which it found had departed from longstanding legal principles for imposing contempt sanctions. The Court restored the proper standard, one based on purely objective factors. Under the Court's decision, the subjective "belief" of the violator is irrelevant. The Court said "We conclude that the Court of Appeals erred in applying a subjective standard for civil contempt. Based on the traditional principles that govern civil contempt, the proper standard is an objective one. A court may hold a creditor in civil contempt for violating a discharge order where there is

not a "fair ground of doubt" as to whether the creditor's conduct might be lawful under the discharge order." *Taggart*, 139 S.Ct. at 1804 (2019).

After concluding that the Ninth Circuit and inferior courts had applied the wrong standard to the discharge violation claims, the Supreme Court reversed and remanded: "Because the Court of Appeals did not apply the proper standard, we vacate the judgment below and remand the case for further proceedings consistent with this opinion." *Id*. The Court did *not* decide to try the case itself and rule on the evidence adduced in the lower courts as to whether the creditor's conduct *could* have satisfied the objective "fair ground of doubt" standard.

*In re Freeman*, 608 B.R. 228 (9th Cir. BAP 2019), cited in Parker's brief at pgs. 57–58, provides the correct model for what should happen in the present case. The BAP held that the bankruptcy court's decision based on the overruled "subjective good faith belief, even if unreasonable" standard had to be reversed and remanded. *Freeman*, 608 B.R. at 234. "Given the change in the controlling law, we must vacate the decision and remand for a decision under the standard now required by the Supreme Court." *Id*. Like the Supreme Court, the BAP did not even contemplate the idea of "trying" the case itself on the lower court record. Trials are the job of trial courts, not appellate courts. The *Taggart* objective "fair ground of doubt" test for discharge violation will require a host of new factual and legal findings, including whether an objective and reasonable

19

person with knowledge of the discharge order "and the statutes that govern its scope," *Taggart*, 139 S. Ct. at 1802, could have concluded its conduct did not violate the order. This was not briefed or argued in the bankruptcy trial proceedings or the post-trial briefs. Resolution will probably require expert testimony and plainly will require new legal argument. It will require new findings of fact and law by the bankruptcy court. Given these facts, just as in *Taggart* and *Freeman*, the only course consistent with the law is to reverse and remand.

The unpublished opinion cited by BCOA, *In re Ahn*, 794 F.App'x 661 (9th Cir. 2020), does not assist BCOA. First, the opinion is not precedential and has no force beyond whatever persuasive value it may have. Second, the willingness of the Court to settle the *Taggart* issues on the existing trial record, in which the *Taggart* standard was not yet applicable and was not argued, is problematical and sets a dangerous model. Third, the *Ahn* case involved a highly esoteric issue of lien law in which an objective person knowledgeable of the law could arguably conclude his conduct did not violate the discharge order. Fourth, the case involved a claim of equitable relief, which by definition is not within the scope of acts prohibited by 11 U.S.C. § 524(a)(2). *Ahn* has no relevance to the present case.

### B. Unsubstantiated and groundless legal theories do not constitute a "fair ground of doubt" under *Taggart*. BCOA's bizarre theories do not come close to what must be shown in order to avoid a finding of contempt.

The March 16, 2020 decision of the Ninth Circuit BAP in *In re Jeong*, 2020 WL 1277575 (9th Cir. BAP 2020) (unpublished) is directly on point for this case and has great persuasive value. While *Jeong* involves a stay violation rather than a discharge violation, the *Taggart* standard applies equally to stay violation cases. (*Id*. at *10 fn. 3, citing *In re Zilog*, Inc., 450 F.3d 996, 1008 n. 12 (9th Cir. 2006).)

In *Jeong*, the bankruptcy court held that a creditor's attorney, named Suh, was liable for contempt on the basis of his unrelenting and groundless legal argument in the case. The case was tried under the *Taggart* "fair ground of doubt" standard. Suh claimed that his interpretation of certain statutes gave him reasonable ground to doubt whether his conduct in recording lien documents violated the stay. The bankruptcy court rejected this contention, and the BAP agreed: "Furthermore, we agree with the bankruptcy court's determination that Suh's stay exception theory did not constitute a reasonable ground for Suh to doubt the applicability of the automatic stay to his actions. His inability to cite any *pertinent* authority in support of his theory is telling." *Id*. at *14 (emphasis in original). "At best Suh's legal theory – unsupported by any authority – is wishful thinking that runs contrary to the express language of § 362(b)(3) and

that would, if credited, dramatically undermine the relief afforded to debtors and the estate under § 362(a)(4). At worst, his legal theory is nothing more than a disingenuous and cynical attempt to evade the clear mandate of the automatic stay." *Id*. at *15.

BCOA's tortured and groundless theories do not add up to a "fair ground of doubt" as to whether seizing Parker's property, renting it out, and keeping all the proceeds—despite utterly no support in California law, the Association's internal CC&Rs, or the Bankruptcy Code, for the purpose of collecting or offsetting a prepetition claim—violated the stay and the discharge injunction. No objective reasonable person, including an attorney representing a creditor, could possibly conclude such a thing. BCOA fails to show why the bankruptcy court's decision should not be reversed and remanded.

## C. Prejudice is presumed when there is error. BCOA again wrongly and misleadingly asserts the burden is on Parker to show prejudice. In any case "prejudice" is manifest in the consequences of the court's application of the wrong law.

BCOA continues to insist that "prejudice" caused by the court's error of law must be proved by Parker. (BCOA reply pgs. 32-36.) This is BCOA's main argument against reversal and remand. BCOA continues to cite excerpts from *Obrey* to the effect that "prejudice" must be found in order to reverse, even when error is shown. That part is true, but BCOA refuses to cite the *rest* of the opinion and appears to be hiding the main holding of *Obrey* from the court:

22

"We must reverse … unless it is more probable than not that the error did not materially affect the verdict. The party benefitting from the error has the burden of persuasion, and in cases of equipoise, we reverse." *Obrey*, 400 F.3d at 701. (internal punctuation omitted). (*See* argument above, Part II paragraph 3.)

Thus, on this appeal it is BCOA, not Parker, who bears the burden of showing the indisputably wrong law applied by the bankruptcy court did not harm Parker. BCOA refuses to acknowledge that this is the law and refuses to even try to meet its burden. In any case the "prejudice" caused by applying the wrong law on the most important aspect of the discharge violation claim is so obvious as to not need more discussion. *See* Parker reply brief pgs. 60-61.

**D. It does not matter what the bankruptcy court ruled on Parker's contempt claims and whether BCOA's "beliefs" were "reasonable." The court applied the wrong legal standard, a fact indisputable after *Taggart*. Its conclusions based on a wrong standard are irrelevant on this appeal.**

BCOA argues on pages 34-36 that the bankruptcy court made various findings as to the "reasonableness" of BCOA's conduct. (e.g. "the bankruptcy court found Appellants' interpretation of the law reasonable at the time they performed such act." 35:25-26.)

None of this matters. The court applied the wrong legal standard, one much more creditor-favorable and imposing a near-impossible standard of proof on the debtor. The Supreme Court rejected this standard in *Taggart*, 139 S.Ct. at

1803. Whatever BCOA actually did or believed is irrelevant. Rather, the conduct must be evaluated from the standpoint of an objective reasonable person, with knowledge of the facts and knowledge of the relevant sections of the Bankruptcy Code. This has not yet happened, and is why this court must reverse and remand for a trial under the new standard required by the Supreme Court.

The court's rationale for its decision not to find contempt for BCOA's conduct (Mem. Dec. 27:2-19) is all based on the court's finding that BCOA had a "good faith belief" its acts did not violate the stay or the discharge. This rationale is now proved to be error, under *Taggart*.

## E. None of BCOA's argument about stay violation contempt is relevant in light of *Taggart*. It does not matter what the court ruled when using a wrong legal standard. Reversal is required.

BCOA urges on pages 36-37 that *Taggart* would not have affected the bankruptcy court's findings. "The only possible way *Taggart* could have had such an impact was if the bankruptcy court found that Appellants acted in good faith but unreasonably so," referring to *Taggart*, 139 S.Ct. at 1801. *Taggart* holds no such thing. The "good faith" of a violator is irrelevant to the analysis, along with whatever subjective "beliefs" the violator may have been harboring. The standard posits an objective person, with full knowledge of the facts and full knowledge of the law. *Taggart*, 139 S.Ct. at 1802–04.) The *creditor* is the

one who must prove an objective person with such knowledge would have a "fair ground of doubt" as to whether the conduct at issue would violate the discharge injunction or the stay. *Id*. If the creditor cannot prove an objectively reasonable fair ground of doubt, the conduct is a contempt. (Id.) BCOA does not dispute that this standard also applies to stay violation contempt. (See *Jeong,* 2020 WL 1277575 at *10 fn. 3.)

The trial of the stay violation contempt under the proper *Taggart* standard has not yet happened. Reversal is mandatory for abuse of discretion arising from applying the wrong law, or a mistaken understanding of the law. Prejudice to Parker is presumed, and BCOA has not even tried to show how the consequences of the court applying the wrong law to a substantial claim did not harm Parker. *Obrey*, *supra*. The only option consistent with the law is to reverse and remand for a fair trial under the correct law.

## F. The bankruptcy court found that BCOA violated the discharge injunction and the automatic stay. The issue on this appeal is that the court applied the wrong law in ruling that those violations did not meet the standard to impose contempt sanctions. The rulings must be reversed and the correct standard under Taggart applied on remand.

The bankruptcy court found that "BCOA apparently collected rent after Parker received her Chapter 13 discharge." (Mem. Dec. 27:3.) The court then said, "The court will not, however, hold BCOA (or the individual respondents)

in contempt for this conduct." Similarly, the court found the April 2, 2016 invoice demanding payment of pre-petition claims under the law as clarified in *Goudelock* was a discharge violation. (Mem. Dec. 26:16-19.) In both cases, the bankruptcy court found that BCOA's subjective "good faith beliefs" insulated BCOA from a contempt sanction. The court also found a litany of stay violations, but did not impose a contempt sanction, due to the same finding of "good faith belief." (Mem. Dec. 27:10-19.)

Because Parker proved the discharge violations, it is imperative that this court reverse the ruling of the bankruptcy court and remand for a proper trial under *Taggart*, the correct standard.

## G. The Supreme Court in *Taggart* did not make a "minor change" in the law. *Taggart* completely overruled the short-lived standard for contempt imposed by the Ninth Circuit and effected a fundamental change in how contempt is determined in cases of discharge violation.

BCOA tries to minimize and downplay the significance of the Supreme Court's *Taggart* decision, saying it "slightly modified the standard for contempt" (32:14-15), that it has only a "limited scope," (33:7), that it is "a minor change" in the law (33:12), that it "did not radically change the standard for contempt" (33:25), that it would "have no effect in most cases" (33:26), and that it was a "limited change" in the law (34:22). BCOA also asserts that *Taggart* "upset only the Ninth Circuit's practice of placing the burden on the

movant to establish civil contempt by clear and convincing evidence" (34:3-5), and that "the only issue the Supreme Court reversed was the Ninth Circuit's holding that an "objectively unreasonable" belief will insulate a contemnor from civil contempt (34:17-19).

BCOA's efforts to persuade this court that *Taggart* was a minor blip in the law fail. To the contrary, *Taggart* was a major repudiation of an unworkable standard imposed by the Ninth Circuit, and re-set fundamentally the standard by which discharge violations and stay violations are judged for contempt. The decision applies nationally, not just to courts of the Ninth Circuit. The decision overruled the Ninth Circuit's decision in the case and makes questionable the holdings in the cases on which it was based, including *In re Zilog*, 450 F.3d 996 (9th Cir. 2006) and *In re Bennett*, 298 F.3d 1059 (9th Cir. 2002). In fact, overruling the "only issue" of the lower court's decision that a subjective and unreasonable belief shields a creditor from contempt is a major legal development with a major impact on this case, requiring reversal of the bankruptcy court's ruling.

BCOA plainly does this in order to argue that Parker suffered no real prejudice in being denied a fair trial under the correct law. BCOA even says "Parker fails to show how the limited change in law post-*Taggart* played any role in the bankruptcy court's opinion." (34:22-23.) This of course is nonsensical, since the *Taggart* decision had not yet been issued when the

bankruptcy court ruled in January 2019. The only issue is what the law is **now**, after the Supreme Court's *Taggart* ruling. The law requires reversal and remand for trial on the objective fair ground of doubt standard mandated by the Supreme Court.

## III. CONCLUSION

Parker has established beyond any question that her assignments of error in the bankruptcy court are correct and that reversal is mandatory. Parker is entitled to a fair trial in which she can present evidence and argument based on the correct law on stay violation damages and on discharge violation contempt. BCOA should have no objection to a fair trial on the proper law, especially since BCOA caused the problems that resulted in this litigation. This appeal only seeks an opportunity to try the facts and law under the correct legal standard. BCOA still has all its potential defenses available.

BCOA has not succeeded in undermining any of Parker's points on the cross appeal. Its brief is not compelling and presents no coherent argument as to why the plain errors of law do not require reversal and remand.

This court should reverse the rulings of the bankruptcy court restricting stay violation damages and applying the wrong law to the discharge violation claims, consistent with controlling law.

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. Bankr. P.

8015(a)(7)(B)(i). As reported by Microsoft Word for Office 365, it contains

5,925 words, excluding the portions exempted by Fed. R. Bankr. P.

8016(d)(2)(C).

This brief complies with the typeface requirements of Fed. R. Bankr. P.

32(a)(5)(A). The body of the brief is set in 14 pt. Times New Roman.

# CERTIFICATE OF SERVICE

DATED this 22nd day of June 2020

*/s/ Christina L. Henry*
Christina L. Henry, WSBA #31273
(*Appearing Pro Hac Vice*)
Attorney for Sarah-Jane Parker